## GOLDTHWAIT and Another *v.* BRADFORD and Another.

PROMISSORY NOTE.—*Contract.*—*Set-off.*—When a promissory note negotiable under the statute is executed, and subsequently the payee of the note makes a written agreement that he will accept as payment upon the note any legal claims against him that the person who has executed the note may obtain, such agreement does not in any manner change the rights of the parties.

SAME.—*Assignment.*—After notice to the payor of an assignment of the note to a third party, he cannot by subsequent purchase of claims against the original payee of the note entitle himself to a set-off against the holder.

SAME.—*Parties.*—*Estoppel.*—In a suit against the payee of a note to have the same declared paid, the complaint recited that the defendant " claimed that he had sold and assigned the said note and mortgage to " a third party, " whom plaintiff makes defendant hereto;" and said third party filed an answer, to which plaintiff demurred, without moving to strike out the answer.

*Held,* that plaintiff was estopped from denying that the person so answering was a proper party defendant.

APPEAL from the Grant Common Pleas.

BUSKIRK, J.—The facts in this cause are substantially as follows: Bradford and Brownlee, who were the plaintiffs below, executed to Oliver Goldthwait, one of the appellants, their promissory note for one hundred and eighty-three dollars and twelve cents, to secure which Bradford and wife executed a mortgage to Oliver Goldthwait upon certain real estate named in the mortgage. On the day and after the note was made, Oliver Goldthwait gave to the appellees a written permission, or license, or agreement, that they might purchase any legal claims against him, said Oliver, and which, when so purchased, should be set off against the note as payments to the amount they legally represented. Under this state of facts the plaintiffs purchased several claims against Oliver Goldthwait, and on the 28th day of September, 1862, a settlement was had between the parties, and the amount of such claims was credited on the note, in the handwriting of Bradford. On the 30th of September, 1862, two days afterward, Oliver Goldthwait sold and assigned the note to Simon Goldthwait for a valuable consideration and without notice to Simon Goldthwait of the agreement made by Oliver that appellees might purchase and set off claims against the note. Notice of this assignment was given to the appellees on the first day of October, the day after the sale and transfer to Simon Goldthwait of the note. Subsequent to this sale, assignment, and notice, the appellees purchased the claims against Oliver Goldthwait, the payee of the note, in amount, as is claimed, sufficient to set off or pay the whole sum due on the note. This action was prosecuted by the appellees to procure the surrender and cancellation of the note and mortgage.

The complaint avers the fact of making the note and mortgage and the execution of the license or agreement in writing by Oliver Goldthwait before referred to, and that appellees had, in accordance with said agreement, purchased claims on said Oliver to an amount equal to the sum due on the note; wherefore they claim that the note has been paid, and pray judgment accordingly.

Goldthwait and Another *v.* Bradford and Another.

To this complaint the appellants answered jointly, first, the general denial; and, secondly, that the note and mortgage were executed to Oliver Goldthwait, and that he, said Oliver, on the 30th day of September, 1862, for a valuable consideration, sold and assigned the same to his co-defendant, Simon Goldthwait, who, at the time, and for a long time afterward, had no notice whatever of any license or agreement, by said Oliver, that said appellees might purchase claims against said Oliver in payment of said note. The answer avers that the appellees had due notice of said sale and transfer of the note before any claims were by them purchased, as in complaint specified.

Simon Goldthwait also answered separately; first, general denial of the complaint; secondly, that said Oliver was the owner of the note and mortgage named in the complaint, and that after the execution of the note and mortgage, said Oliver, on the 30th day of September, 1862, sold and assigned the same to him, for a valuable consideration; of which sale and assignment said appellees had due notice on the first day of October, 1862, one day after the assignment; that when said notice was so given to appellees, they had not, nor had either of them, purchased any claim or claims against said Oliver Goldthwait; that when he so purchased said note of said Oliver, he had not any notice or information that said Oliver had made any agreement with plaintiffs that they, or either of them, might purchase claims against said Oliver to set off against said note. Nor had he any such notice for a long time afterward.

The answer further avers that the note and mortgage are due and unpaid, copies of each being filed, and prays judgment against Bradford and Brownlee for the amount due on the note, and decree of foreclosure against Bradford, and for other relief, etc.

The third answer of Simon Goldthwait avers that the note in complaint now is, and has been ever since the 30th day of September, 1862, his property, by sale and assignment, of which the appellees had due notice on the first day

of October, 1862; that he paid for the note a valuable con-
sideration, and without any notice whatever of any contract
or agreement of said Oliver that the appellees might pur-
chase claims against said Oliver to pay or set off the same,
and demands judgment for costs, etc.

The fourth paragraph of Simon Goldthwait's separate
answer alleges that said appellees and said Oliver Gold-
thwait, on the 28th day of September, 1862, had a full set-
tlement of all claims which the appellees had at that time
purchased against said Oliver, and that the amount jointly
(sixty-two dollars and sixty-seven cents) was duly credited
on said note by said Bradford; and that on the 30th day of
September, 1862, he (defendant) purchased the note without
notice, etc., of any agreement, as stated in the former answer;
and that appellees had due notice of the sale and assign-
ment October 1st, 1862, at which time they had not pur-
chased any claims against said Oliver Goldthwait; where-
fore, etc.

To all these answers, except the first paragraphs, the ap-
pellees demurred "for cause that neither of said paragraphs
contains facts sufficient to constitute a cause of action."

This demurrer the court sustained; to which the defend-
ants excepted at the time, and refused to amend their answer
or to answer further, when the court found against the de-
fendants.

The appellants moved the court for a new trial, and filed
the causes: that the court erred in sustaining the demurrer
to the answers of the defendants and to all of them; that the
finding was contrary to law; that the finding was not sus-
tained by sufficient evidence.

The court overruled the motion; to which defendants ex-
cepted, and filed their motion in arrest of judgment, that the
court erred in sustaining the demurrer to the defendants'
answers, and all of them; which motion was overruled and
an exception taken.

The court found for the plaintiffs without any evidence in
the cause. The court then pronounced judgment against

Goldthwait and Another *v.* Bradford and Another.

the appellants, that said note and mortgage be declared fully paid and cancelled, etc., and that defendants pay the costs. Appeal prayed and granted.

The errors assigned in this case are as follows:

1. The court erred in sustaining the demurrer to the joint answer of defendants.

2. The court erred in sustaining the demurrer to the separate answer of Simon Goldthwait.

3. The court erred in finding for the plaintiffs over a general issue without any evidence.

4. The court erred in overruling motion for a new trial.

5. The court erred in overruling motion in arrest of judgment.

The only available errors are the first and second. The record shows that after the court sustained demurrers to the joint and separate answers of the defendants, they refused further to amend and withdrew the general denial. The court thereupon, very properly, rendered judgment for the plaintiffs. The complaint was then unanswered. The court was bound to regard the allegations of the complaint as confessed, and act upon them as true. Where a judgment is rendered for a plaintiff on demurrer to answers, upon refusal to plead further, the plaintiff is not required to offer any evidence. *Giles* v. *Gullion,* 13 Ind. 487. Consequently, no motion for a new trial is necessary. A defendant by refusing to amend an answer to which a demurrer has been sustained, agrees to stand upon the ruling of the court upon the demurrer. It is a virtual admission that he has no case in court, if the ruling of the court was correct. A defendant might, after he had permitted judgment to go on sustaining a demurrer to his answer, move in arrest of judgment on the ground that the court had no jurisdiction of the subject-matter of the action, but a motion in arrest of judgment, for the reason that the court had erred in sustaining the demurrer to the answer, amounts to nothing. The question had been properly reserved by an exception to the ruling of the court on the demurrer.

The appellants demurred to the complaint; the demurrer was overruled, and an exception was taken; but this ruling has not been assigned for error, and we cannot therefore decide anything as to the sufficiency of the complaint.

The joint answer of the defendants was in two paragraphs. The first was a denial. The only material allegation in the second paragraph was, that Oliver had sold and transferred the note and mortgage mentioned in the complaint to Simon, and that Simon had purchased them without notice of the agreement, for a valuable consideration, and was, therefore, the *bona fide* owner and holder of the note and mortgage. So far as Oliver was concerned, this answer only amounted to a disclaimer of any interest in the suit. The sustaining of the demurrer to this answer worked no injury to him, nor did it to Simon, for the reason that the same matters are alleged in his separate answer.

This leaves for our decision the correctness of the ruling of the court in sustaining the demurrer to the separate answer of Simon Goldthwait. But before we can reach the decision of that question, we have to decide a preliminary one presented by the appellees. It is contended by them that the court committed no error in sustaining the demurrer to the separate answer of Simon Goldthwait, for the reason that he was not a party to the record. If this objection is well taken, it is decisive of the case, and must result in an affirmance of the judgment. The record in this cause is very much confused and mixed up. We are not surprised at this, when we take into consideration the many changes that occurred in the parties and pleadings, and the fact that this cause was actually pending in the court below for five years. This action was originally commenced by Moses Bradford against Oliver Goldthwait. The defendant demurred to the complaint, for the reason that James Brownlee was not made a plaintiff, but the demurrer was overruled, and the cause was continued. At a subsequent term an amended complaint was filed, and James Brownlee was added as a plaintiff. This complaint proceeds against Oliver alone,

until near the close, when it is alleged, "that Oliver claimed that he had sold and assigned the said note and mortgage to Simon, who plaintiffs make defendant hereto." At a subsequent term of the court, John Brownlee, who was and is of counsel for the appellees, filed an affidavit for a continuance of the cause, in which it is stated that Simon was a defendant, and that he and the plaintiffs had been making an effort to compromise the case, and that by reason of such effort at adjustment, the plaintiffs were not ready for trial, and the cause was continued. At a subsequent term of the court, Simon filed his separate answer, in which he states that he had been made a defendant by the order of the court. The plaintiffs, instead of moving to strike out his answer, as would have been the proper practice, if he was not a party to the record, demurred to it, and thus treated him as a party defendant. We think that it is quite clear that the appellees are estopped from saying that he is not a proper party defendant.

This brings us to the consideration of the main question in the case, and that is, whether the ruling of the court was correct in sustaining demurrers to the answer of the defendant, Simon Goldthwait. The second paragraph of the answer is in the nature of a cross complaint, and alleges, in substance, that he became the owner, by purchase and assignment, of the note and mortgage mentioned in the complaint, on the 30th day of September, 1862; that he purchased the same for a valuable consideration, and without notice of the agreement that had been entered into as to the purchase of claims against the payee of the note; that he notified the makers of the note on the first day of October, 1862, that he had purchased the note and mortgage; that the plaintiffs had purchased the claims against Oliver Goldthwait that they were seeking to have entered as a credit upon the said note, after they had received notice that he had purchased the same; that the said note, except the credits indorsed thereon before the same was assigned to him, remained due and unpaid. The prayer of the cross complaint was that he

should have judgment against the makers, and a foreclosure against Bradford and wife.

The third was the same in substance as the second, except that it was pleaded in bar of the action, and no affirmative relief was demanded.

The fourth paragraph alleges that the makers and payee of the note had made a settlement on the 28th day of September, 1862, of all claims which the makers had purchased against the payee, and that a credit therefor had been entered on the said note; that he had, on the next day, purchased the said note for a valuable consideration, and without notice of the agreement set out and relied upon in the complaint; and that he had notified the makers on the first day of October, 1862 that he had purchased the said note; and that from that time he had been the *bona fide* owner and absolute holder of such note and mortgage.

The validity of the above answers is to be viewed in two aspects; first, as they are affected by the agreement; and secondly, without the agreement.

What was the legal effect of the agreement? The plaintiffs, on the 11th day of January, 1862, by their note of that date, unconditionally agreed to pay Oliver Goldthwait, twelve months after date, the sum of one hundred and eighty-three dollars and twelve cents. This note was delivered to the payee. On the same day, the payee executed and delivered to the makers the following instrument, namely:

"I have had this day executed to me a note by James Brownlee and Moses Bradford for one hundred and eighty-three dollars and twelve cents, which I agree to receive as credit on said note any legal claims *against* me that they may obtain. January 11th, 1862.    O. GOLDTHWAIT."

This agreement was written on a separate piece of paper from the note. It was in no manner attached to the note, nor did the note make any reference to it. It was executed on the same day that the note was, and we infer from the language of the agreement that it was subsequent to the execution of the note. There is no consideration mentioned

Goldthwait and Another. *v.* Bradford and Another.

in the agreement, nor is it alleged that the execution of the note in any manner depended upon the execution of the agreement. It seems to stand without any consideration to support it. But suppose that it was executed at the same time that the note was, and that it was supported by a consideration, the question still recurs, what was its legal effect? Did it confer upon the plaintiffs any right that they did not possess without it? In what manner did it affect the legal rights and obligations of the parties? It gave to the plaintiffs the consent of the payee of the note to do just what they had the undoubted and undisputed right to do under the well settled principles of law, either with or without his consent. Suppose this agreement had been incorporated into the note, or that the agreement had been attached to the note, and that Simon Goldthwait had seen it before he took the assignment, would the legal rights of the parties have been different? But it is claimed that it would have been notice to the purchaser. We concede that it would have been notice, but notice of what? It would have been the same notice that the law gives, and that is, that the maker of a promissory note, not governed by the law merchant, has the right to purchase claims against the payee of such note, before he has received notice of the assignment of the note, and that such claims will constitute a valid set-off against the note, whether the suit was brought by the original payee or the assignee of the payee. But the agreement not being written on or attached to the note, but being in the possession of the makers of the note, it would not be notice to any person unless he had received actual notice of its existence and contents. We are clearly of the opinion that the agreement was invalid for the want of a consideration; and that if it was valid, it would not change, alter, or in any manner affect the legal rights and obligations of the parties.

The question as to what were the rights of the plaintiffs under the law, remains to be considered. Our statute authorizes the sale, assignment, and transfer of promissory

notes, and it gives to the maker of a note the same defense against an assignee that he would have against the assignor or the original payee. Section 3 of an act concerning promissory notes, etc., (2 G. & H. 658) provides, that "whatever defense or set-off the maker of any such instrument had, before notice of assignment against an assignor, or against the original payee, he shall have also against their assignees."

Now suppose that Oliver Goldthwait, the original payee of the note, had, upon its maturity, brought suit thereon against the makers, what would have been their right of set-off? They could have pleaded as a set-off any note or claim against the payee that they had acquired prior to the commencement of the action, and which was due at or before the time when offered in evidence as a set-off.

Section 57, 2 G. & H. 88, provides that "the set-off shall be allowed only in actions for money demands upon contract, and must consist of matter arising out of a debt, duty, or contract, liquidated or not, held by the defendant at the time the suit was commenced, and matured at or before the time it is offered as a set-off."

When the action is brought by the original payee, no set-off can be allowed, unless the maker had acquired it before the commencement of the action; but when the action is brought by the assignee, no set-off, as against the assignor, can be allowed, unless it had been acquired by the defendant at the time of, or before notice of, the assignment. *Shannon* v. *Wilson*, 19 Ind. 112.

The latter part of section 6, 2 G. & H. 40, reads: "And all actions by assignees shall be without prejudice to any set-off or other defense existing at the time of, or before notice of, the assignment."

The word "existing" has given rise to some doubt as to the true construction of the above section. The above clause was copied from the New York code. It has been held in that State that when an action is brought by an assignee of a chose in action not negotiable, and the defendant seeks to

Goldthwait and Another *v.* Bradford and Another.

set off a claim in his own favor against the assignor, he must prove that the claim belonged to him before notice of the assignment. *Soloman* v. *Holt,* 3 E. D. Smith, 139; *Beckwith* v. *The Union Bank,* 5 Seld. 211. The same construction has been placed upon this clause by this court. *Haugh* v. *Scabold,* 15 Ind. 343; *Sayres* v. *Linkhart,* 25 Ind. 145; *King* v. *Conn,* 25 Ind. 425.

We think this is the true construction. The answer avers that all the claims purchased by the makers against the payee, except such as had been credited on the note on the 28th of September, 1862, had been purchased after the plaintiffs had been notified that the note had been assigned, and was held and claimed by the said Simon Goldthwait. Such claims could not be pleaded as a set-off against the assignee.

We think that the cross complaint and the third and fourth paragraphs of the separate answer of Simon Goldthwait were good. The matters alleged in the cross complaint entitled him to the relief demanded. The matters pleaded in the second and third paragraphs of the answer were a complete defense to the action. The court erred in sustaining the demurrer to the cross complaint and the third and fourth paragraphs of answer, for which errors the cause must be reversed.

The judgment is reversed, with costs, and the cause is remanded, with directions to the court below to overrule the demurrer to the cross complaint and answers of Simon Goldthwait, and for further proceedings in accordance with this opinion.

*A. Steele* and *R. T. St. John,* for appellants.

*J. Brownlee* and *H. Brownlee,* for appellees.