### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

# STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1871, IN THE FIFTY-SIXTH YEAR OF THE STATE.

---◦---

## FRENZEL ET AL. v. MILLER.

FRAUDULENT REPRESENTATIONS.—A. sued F. & H. upon two promissory notes. F. & H. answered, first, that the consideration of the notes was the purchase of a certain mill, with engine, boiler, and machinery from V., who was the payee of the notes and had transferred them to the plaintiff; that V. fraudulently and falsely represented that the boiler, engine, and machinery were in good condition, sound, and fit for the running of the mill, and defendants, relying on said representations, purchased; that V. knew the representations were false; that, in fact, said boiler and machinery were worthless, but they could not discover this fact by ordinary diligence, and they were required to expend large sums in repairs, and the mill was kept idle in undergoing repairs on account of defects.

*Held*, that this answer was good on demurrer.

SAME.—*Warranty.*—A second paragraph of answer contained the same allegations as the first, with an averment of a warranty.

*Held*, that this was a sufficient answer.

PROMISSORY NOTE.—*Assignment.*—*Party in Interest.*—Another paragraph of answer alleged that the plaintiff was not the real party in interest, the assignment being made to cheat the defendants.

*Held*, that this answer was bad.

SAME.—*Bankrupt Law.*—*Fraud.*—Another paragraph of answer averred that the assignment was made in fraud of the bankrupt law.

*Held*, that this answer was not good on demurrer.

VOL. XXXVII.—1

Frenzel *et al. v.* Miller.

CONTRACT WITH CO-DEFENDANT.—*Set-off.*—Another paragraph of answer was that F. agreed with his co-defendant H. to pay the notes and save him harmless, and that the plaintiff was indebted to him for goods sold.
*Held,* that this was not a sufficient answer.

EVIDENCE.—*Damages.*—On the trial, the court excluded evidence of damages sustained by loss of time while the mill was undergoing repairs in machinery, of defects which existed at the date of sale.
*Held,* that the evidence should have been admitted.

SAME.—*False Representations.*—*Knowledge.*—The court allowed evidence of the want of knowledge by V. and A. of the falsehood of the representations made, one of the paragraphs of answer having charged that A, the plaintiff, united with V. in the fraudulent representations.
*Held,* that if the evidence had been admissible under the answers alleging fraud, the court should have instructed the jury that such testimony could not be considered in determining whether there had been a warranty and a breach thereof.

SAME.—*Cross Examination.*—On the trial, the plaintiff introduced a witness who testified that the mill was in the same condition a short time before the sale, as it had been for over three years previous thereto. The defendants offered then, on cross examination, to prove that the machinery was worthless three years before said sale. The court refused the evidence.
*Held,* that this was error, as the evidence offered was proper, on cross examination, as a means of testing the knowledge of the witness, and for the purpose of explaining his testimony in chief.

INSTRUCTION.—*Notice of Assignment.*—The court instructed the jury that a set-off, set up in answer, could not be allowed unless it accrued before the assignment of the notes.
*Held,* that this was error; that the instruction should have been that the set-off must have accrued before notice to defendants of the assignment.

SAME.—*False Representation.*—*Knowledge.*—The court instructed the jury that fraudulent representations, to relieve a party from his contract, must be false, and the intent, when they were uttered, must have been to deceive, and they must have been intended to operate on the party complaining; and the court refused to instruct that if the representations were false and relied upon to the defendant's damage, they constituted a defence, although not known to be false by V. when he made them.
*Held,* that the instruction given should have been refused, and the one refused given.

SAME.—*Silence.*—An instruction was asked and refused, that if V. knew that the machinery was out of order, and that this could not be discovered by ordinary care, and that the defendants believed the machinery was in good order, the silence of V. would amount to a representation.
*Held,* that this instruction was correctly refused.

APPEAL from the Ripley Common Pleas.

BUSKIRK, J.—The appellee sued the appellants upon two

Frenzel *et al. v.* Miller.

notes, executed by Joseph Frenzel and Henry Harderback, on the 21st of December, 1863, payable to Alexis Voltz on the first days of January 1865 and 1866, for one thousand two hundred and fifty dollars each, and to obtain a foreclosure of a mortgage executed by the said Frenzel and Harderback and their wives to secure the payment of the said notes. The notes and mortgage were assigned by the payee to the plaintiff below.

The appellants answered in nine paragraphs. The first was in the nature of a counter claim. It was alleged, in substance, that the notes sued on were given in part consideration for the real estate described in the mortgage, and the engine, boiler, and machinery of a saw and grist mill thereon situate, which they purchased of the said Voltz at the date of the said notes; that the said Voltz, at the time of the said sale, falsely and fraudulently represented to the defendants that the said engine, boiler, and machinery in the said mill were in good condition, sound and fit for the purpose for which they were intended, and were in good running order; that the defendants, in reliance upon the said false and fraudulent representations as true, made the said purchase; that the said boiler was burned out and dangerous to run, and was valueless, except as old iron, all of which was well known to the said Voltz, and was unknown to the defendants, and that such defects could not have been discovered by ordinary diligence; that after the purchase of the said mill, the said defendants were compelled to sell the said boiler and machinery for old iron; that the said boiler, in the condition that it was in at the time of the said sale, was only worth one hundred dollars, and if it had been in the condition as represented, it would have been worth two thousand dollars; that the engine and machinery of the said mill were out of repair, not sound or in good running order; that the defendants were compelled to, and did, expend one hundred and seventy dollars to put the said machinery in running order; that by reason of the defects in the said engine and boiler, they were put to the expense

of two hundred dollars in removing the same and in replacing them with others; and that by reason of such defects the defendants lost the use of said mill for sixty-five days, which was reasonably worth seven hundred and eighty dollars, for all of which they claim damage in the sum of two thousand dollars.

The second was the same as the first, except it was alleged that Voltz had warranted that the engine, boiler, and machinery were sound, in good condition, and in good running order, and the breach of the warranty and the damages sustained thereby were set out in the same manner as in the first paragraph.

The third was a set-off. In this it was alleged that prior to the assignment and before notice thereof the payee of the said notes was indebted to the defendant Frenzel, as per bill of particulars filed, and that when such indebtedness was created it was understood and agreed that the same should be credited upon the said notes.

The fourth paragraph alleges that the plaintiff was not the real party in interest, for the reason that he took the assignment of the said notes and held the same for the fraudulent purpose of cheating and defrauding the creditors of the said Voltz.

The fifth alleges that the plaintiff took the assignment of the said notes on the 1st of July, 1867, when Voltz was in failing circumstances, and in fraud of the bankrupt law of the United States, as the assignment was made to prefer his creditors.

The sixth alleges that the defendant Frenzel agreed with his co-defendant, Harderback, to pay off the notes sued on and save him harmless, and that the plaintiff was indebted to him in the sum of seventy-seven dollars and forty-six cents for goods and merchandise sold and delivered, as per bill of particulars filed.

The seventh paragraph alleges that the defendants, on the 7th of January, 1864, purchased of Voltz, the payee of said notes, the real estate, mill, and machinery mentioned in the

complaint for the sum of three thousand five hundred dollars; that one thousand dollars was paid down at the time of the purchase, and the notes sued on were given; that before notice of the assignment and the commencement of the action, the defendants paid to the said Voltz one thousand dollars on the said notes; that at the time of making the said purchase, the said plaintiff and the said Voltz falsely and fraudulently represented that the said mill and machinery were sound, in good condition, and in good running order, when in truth and in fact, the said engine, boiler, and machinery were old, worn out, and worthless, of which the defendants were ignorant, and placed special confidence and reliance in the representations so made as aforesaid; that the said plaintiff and Voltz combined and confederated together to cheat and defraud the defendants, and, to induce them to make said purchase, falsely and fraudulently represented that the said mill and machinery were in good order, when in truth the same were worn out and worthless, and the defendants were compelled to, and did, expend the sum of four thousand dollars in purchasing new machinery, and in putting the same in good order, and that by reason of such defects they lost the use of the mill sixty-five days, the reasonable use whereof would have been seven hundred and eighty dollars. The paragraph prays that Voltz be made a party, and that they recover judgment for three thousand dollars.

The eighth paragraph alleged that before the assignment of the notes they had been paid in full.

The ninth paragraph contains the same allegations as the first, with the additional averments that the defendants resided twenty-four miles from the said mill; that the said Voltz agreed to run and operate the said mill, and avoided doing so by falsely pretending that the hired hands would not work; that the said boiler was walled up so that it could not be examined, and that the said defects could not have been discovered by ordinary diligence, and demanded judgment, etc.

There were demurrers to all the paragraphs of the answer, except the eighth and ninth, which were sustained to the first, fourth, fifth, sixth, and seventh, and overruled as to the second and third paragraphs, and exceptions were taken to sustaining the demurrers.

The plaintiff replied to the second, third, and ninth paragraphs of the answers in two paragraphs: first, general denial; second, that after the plaintiff got the notes in suit, defendants said they were all right, and they would pay them after they had run said mill and found out the quality and condition of the engine, boiler, and fixtures; wherefore they ought to be estopped.

There was a motion made and overruled to strike out the second paragraph of reply, and an exception was taken; but the question is not reserved by bill of exceptions, and no cross errors are assigned. There was a trial by jury, resulting in a verdict for plaintiff of one thousand six hundred and eighty-two dollars and ninety-four cents.

The court overruled a motion for a new trial and rendered judgment on the verdict.

The errors assigned are: first, in sustaining demurrers to the first, fourth, fifth, sixth, and seventh paragraphs of the answer; second, in overruling evidence offered to prove the value of the mill while the same was idle; third, in permitting plaintiff and Voltz to testify that they did not know of the defects in the machinery; fourth, in permitting Newhouse to testify as to the condition of the mill and machinery three years before the sale; fifth, in giving instructions one, twelve, and seventeen, as requested by plaintiff; sixth, in refusing charges one and two, as requested by defendants; seventh, in overruling motion for a new trial.

We think that the first and seventh paragraphs of the answer were good, and that the court erred in sustaining a demurrer to them. We are of the opinion that the fourth, fifth, and sixth paragraphs of the answer were bad, and that the court committed no error in sustaining the demurrer to them.

Frenzel *et al. v.* Miller.

We are of the opinion that the court erred in excluding the evidence offered by the defendants to prove the amount of damage they had sustained by reason of the mill being unemployed while undergoing repairs for defects that existed at the time of the sale. See *Griffin* v. *Colver*, 16 N. Y. 489; *Page* v. *Ford*, 12 Ind. 46; *Fultz* v. *Wycoff*, 25 Ind. 321; *Overbay's Adm'r* v. *Lighty*, 27. Ind. 27.

We are of the opinion that the court erred in permitting the plaintiff and Voltz to testify that they did not know of the defects in the mill and machinery at the time they made the representations. The second paragraph of the answer set up a warranty, and under that, the defendants were not required to prove that the warranty had been fraudulently made. When we come to consider the instructions given and refused, we will determine whether such proof had to be made under the answers alleging that the representations had been falsely and fraudulently made. But if the evidence was admissible under the answers alleging fraud, the court should have instructed the jury that such testimony should not be considered in determining whether there had been a warranty and a breach thereof.

August Newhouse was examined by plaintiff and testified that he had first known the mill three and one-half years before purchase by defendants, and up to one year before the sale; that he had examined it in the fall of 1863, with the view of purchasing it, and found it in about the same condition as when he had formerly known it. Upon cross examination the defendants offered to prove by him that the boiler and engine were worn out and defective three years before their purchase, to which plaintiff objected on the ground that the defendants had closed their evidence, and that this evidence was not proper upon cross examination. The objection was sustained and the evidence excluded, to which ruling the defendants excepted. We are of the opinion that the court erred in excluding the evidence. We think that the evidence was proper upon cross examination, as a means of testing the extent and accuracy of the knowledge of the

witness in reference to the condition of the mill and machinery, and especially for the purpose of explaining his statement upon his examination in chief, that the mill was, in the fall of 1863, in about the same condition that it was three years before. See *Adams* v. *Dale,* 29 Ind. 273; *Huckleberry* v. *Riddle,* 29 Ind. 454; *Davis* v. *The State,* 35 Ind. 496.

The first instruction given by the court does not contain a full and accurate statement of the law as to what defects will not be reached and covered by a warranty, but the law was correctly stated in subsequent instructions.

The appellants complain of the giving of the twelfth instruction, which was in these words: "In order to make the set-off pleaded of claims against Voltz, the defendants must show that the indebtedness accrued before the assignment of the notes to Miller, and in addition to that, that there was a contract and agreement between Frenzel and Voltz that the same should go as a credit on these notes."

We are clearly of the opinion that the court erred in giving this instruction. The jury were told that to entitle the defendants to a set-off, it must be shown that the indebtedness had accrued prior to the assignment of the notes. This was wrong. If the assignee of a note desires to protect himself against a set-off against the original payee and assignor, he should give notice of such assignment to the makers. Our statute provides that the maker of a note shall have against the assignee the same defence that he would have against the original payee, and that all actions by assignees shall be without prejudice to a set-off or other defence existing at the time of or before notice of the assignment. 2 G. & H. 38, sec. 6; *Goldthwait* v. *Bradford,* 36 Ind. 149.

The appellants insist that the court erred in giving the seventeenth instruction, and in refusing to give the first instruction, as asked by them. As the instructions given and those refused are in direct opposition, we will consider them together.

The seventeenth instruction was as follows: "Fraudulent representations, to relieve a party from his contract, must be

Frenzel *et al. v.* Miller.

false, and the intention, when they were uttered, must have been to deceive. And they must have been intended to operate on the party complaining."

The first instruction asked by the defendants, and refused by the court, was as follows: "If the jury find that Voltz, at the time of and before the sale, made the representations charged by the defendants, and the defendants, relying upon such representations, purchased the mill, believing them to be true, and if such representations proved to be false, to the defendants' damage, then defendants are entitled to damages on their answer, notwithstanding Voltz did not know that what he said was false."

It is maintained by the appellee that the instruction given by the court was correct, and in support of his position he refers to, and relies upon the case of *Zehner* v. *Kepler*, 16 Ind. 290, and the authorities therein cited.

It is maintained by the appellants that the instruction given was wrong, and the one asked and refused was correct, and in support of these positions reference is made to the case of *Woodruff* v. *Garner*, 27 Ind. 4, and the authorities therein referred to.

The rulings in the two principal cases are in conflict. We propose to examine these cases and the authorities cited in support of them, and other English and American cases, with the view of ascertaining the correct rule on the subject.

The case of *Zehner* v. *Kepler* was an action upon a note, and for money had and received. The defendant, among other things, pleaded "that the note was given for a horse, and at the time of the sale the horse was unsound and crippled, etc., which was well known to Starr, the payee and assignee of the note, and that Starr falsely and fraudulently represented to Zehner that the horse was sound, and fraudulently concealed the unsoundness."

The sixth instruction, so far as it relates to the question under consideration, was as follows:

"6. In the third clause of the defendants' answer, they allege that the plaintiff made certain false and fraudulent rep-

resentations about the horse. A fraudulent representation, to entitle a party to defend successfully, must be false, and known to be false by the seller at the time it was made, and be about a material part of the contract, and be relied on by the buyer."

This court says: "The sixth charge, above set out, is claimed to be erroneous, because the jury were advised that the false representations, in order to be available as a defence, must have been known to be false by the party making them. It is claimed that they were 'equally a fraud, whether known to be false or not; the individual who asserts a thing ought to know it to be true and ought to make it good.'

"The law in this respect, as laid down in the charge given, is beyond doubt, as a general rule, correct. Thus, it is said by an elementary writer: 'If the representation is not known to be false by the utterer of it, or be not used with intent to deceive, it will not amount to fraud, although really false.' Smith Cont. 152.

"Again. 'But the misrepresentation of a fact known by the party making the statement to be untrue, amounts to a fraud in law, if the misrepresentation be naturally calculated, or be expressly intended, to induce a person to act thereon so that he may be prejudiced.' Chitty Cont. 683. See, also, Greenl. Ev., sec. 230; 4 Stephen Nisi Prius, 1284, 1286; *Stanley* v. *Norris*, 4 Blackf. 353; *Humphreys* v. *Comline*, 8 *id.* 516; *The State Bank* v. *Hamilton*, 2 Ind. 457. There may be, and probably are, cases which form exceptions to the general rule thus stated, cases where a party may rescind a contract for false representations not known to be false by the party making them. See *Gatling* v. *Newell*, 9 Ind. 572."

In *Stanley* v. *Norris, supra,* this court says: "The action now before us is not founded, as the court supposes, upon a warranty that the horse was sound. The *gravamen* of the suit is the fraud of the defendant in falsely representing the horse to be sound, when he knew him to be unsound. It is the defendant's knowledge of the falsity of the representation, upon which the plaintiff in his declaration depends;

and, without proof of that knowledge, this action cannot be sustained."

In *Humphreys* v. *Comline, supra,* this court says: "Though there is some evidence proper for consideration in a question of this kind, there is not enough clearly to establish the fact that the representations made by Comline at the time of the sale were fraudulent. It should have been shown that they were not only false, but known to have been so by him at the time they were made."

This court in *State Bank* v. *Hamilton, supra,* says: "Since the case of *Pasley* v. *Freeman,* 3 Term R. 51, it is well established that such representations, if fraudulently made, would have rendered the defendants liable. But it is equally well settled by *Haycraft* v. *Creasy,* 2 East, 92, and numerous subsequent decisions, that when the person making the representations was himself deceived, and had no intention to deceive others, he is not responsible for the correctness of his belief or opinions so represented, however strongly such belief or opinions may have been expressed."

We have examined the elementary books above referred to, and find that they sustain the ruling of this court in the principal case now under consideration.

The case of *Woodruff* v. *Garner, supra,* was an action to obtain the rescission of a contract between the parties for the exchange of lands, and of conveyance made in pursuance of the contract, upon the ground that the contract and conveyance were induced by certain specified false and fraudulent representations of the defendant, as to the facts and the law.

This court, upon the question under review, say: "The court instructed the jury that 'false and fraudulent representations,' made by the defendant to the plaintiff, upon which the latter relied in making the contract, would not avail the plaintiff in the case, unless it also appeared that the defendant, at the time of making the representations, knew them to be false. The appellant complains of this instruction. We cannot conceive of a state of the evidence, under the issues of this case, which would justify this instruction. We can

well understand that there may be, and are, many cases in which, for the purpose of proving that false representations are fraudulent, it is necessary to show that the party who made them knew that they were false. But we know of no case where relief will be denied in equity on account of false and fraudulent representations upon which a party has relied to his injury, merely because the proof fails to show that the party who perpetrated the fraud knew that his representations were false.

"The law is thus stated by an elementary writer: 'If the statement be in fact false, and be uttered for a fraudulent purpose, which is in fact accomplished, it has the whole effect of fraud in annulling the contract, although the person uttering the statement did not know it to be false, but believed it to be true.' 2 Pars. Con. 775. The following cases are to the same effect: *Taylor* v. *Ashton*, 11 M. & W. 401; *Warner* v. *Daniels*, 1 Woodb. & Min. 90; *Ainslie* v. *Medlycott*, 9 Ves. 13; *Shackleford* v. *Haudley*, 1 A. K. Marsh. 500; *Munroe* v. *Pritchett*, 16 Ala. 785. Nor are we without authority of like character in Indiana. *McCormick* v. *Malin*, 5 Blackf. 509, is directly to the point."

PARKE, B., in delivering the opinion of the Court of Exchequer in the case of *Taylor* v. *Ashton*, states the law thus:

"From this proposition we entirely dissent, because we are of opinion, that independently of any contract between the parties, no one can be made responsible for a representation of this kind, unless it be fraudulently made. That is the doctrine laid down in *Pasley* v. *Freeman*, where, for the first time, the cases on this subject were considered. In that case Mr. Justice GROSE differed from the rest of the court, and thought the law gave no remedy for fraud, unless there was a contract between the parties. The court, however, held, that if a person told that which was untrue, and told it for a fraudulent purpose, and with the intention to induce another to do an act, and that act was done to the prejudice of the plaintiff, then an action for fraud would lie. That case was followed by *Haycraft* v. *Creasy*, and a great variety of other

cases, and it must now be considered as established law. But then it was said, that in order to constitute that fraud, it was not necessary to show that the defendants knew the fact they stated to be untrue; that it was enough that the fact was untrue, if they communicated that fact for a deceitful purpose; and to that proposition the court is prepared to assent. It is not necessary to show that the defendants knew the fact to be untrue. If they stated a fact which was true for a fraudulent purpose, they at the time not believing that fact to be true, in that case it would be both a legal and moral fraud."

Sir WILLIAM GRANT, the Master of the Rolls, in delivering the opinion of the high court of chancery, in *Ainslie* v. *Medlycott, supra,* said: "No doubt, by a representation, a party may bind himself just as much as by an express covenant. If, knowingly, he represents what is not true, no doubt he is bound. If without knowing that it is not true, he takes upon himself to make a representation to another, upon the faith of which that other acts, no doubt he is bound, though his mistake was perfectly innocent."

In the case of *M'Ferran* v. *Taylor,* 3 Cranch, 281, the Supreme Court of the United States, after remarking that there was a material misrepresentation, and that the defendant had contended that it originated in mistake, not in fraud, say: "From the situation of the parties, and of the country, and from the form of the entry, it is reasonable to presume, that this apology is true in point of fact; but the court does not conceive that the fact will amount to a legal justification of the person who has made the misrepresentation. He who sells property on a description given by himself, is bound to make good that description; and if it be untrue in a material point, although the variance be occasioned by a mistake, he must still remain liable for that variance."

The same court, in *Smith* v. *Richards,* 13 Pet. 38, after reviewing the leading English and American cases on this subject, say:

"The principles of these cases we consider founded in

sound morals and law. They rest upon the ground that the party selling property must be presumed to know whether the representation which he makes of it is true or false. If he knows it to be false, that is fraud of the most positive kind; but if he does not know it, then it can only be from gross negligence; and in contemplation of a court of equity, representations founded on mistake, resulting from such negligence, is fraud. 6 Ves. 180, 189. Jeremy, 385, 386. The purchaser confides in it upon the assumption that the owner knows his own property, and truly represents it; and, as was well argued in the case in Cranch, it is immaterial to the purchaser whether the misrepresentation proceeded from fraud or mistake. The injury to him is the same whatever may have been the motives of the seller."

WOODBURY, J., in *Warner* v. *Daniels, supra*, says:

"These, then, vitiate the transaction as representations untrue, on material points; and, if untrue by mistake, still vitiating as much by such a mistake in material matters as if there was a fraudulent design. *Daniel* v. *Mitchell*, 1 Story, 172. So it is the better opinion, that whether Daniels himself knew these accounts to be false or not, is immaterial, if they were false and influential. 1 Story Eq. Jur., sec. 193; *Ainslie* v. *Medlycott*, 9 Ves. 13; *Graves* v. *White*, Freem. 57; *Pearson* v. *Morgan*, 2 Brown Ch. C. 388."

Mr. JUSTICE STORY, in *Daniel* v. *Mitchell, supra*, says:

"We have said that the bill mainly proceeds upon the imputation of fraud; but its allegations are sufficient to found a claim for relief, if the bargain was made upon material representations of matters of fact, constituting the basis thereof, which are untrue, even although innocently made by the mistake of the parties, or by the mistake of the sellers alone. Nothing is more clear in equity than the doctrine that a bargain founded in a mutual mistake of the facts constituting the very basis or essence of the contract, or founded upon the representations of the sellers, material to the bargain, and constituting the essence thereof, although made by innocent mistake, will avoid it. Mistake, as well as fraud, in any rep-

resentation of a fact, material to the contract, furnishes a sufficient ground to set it aside and to declare it a nullity."

In *Juzan* v. *Toulmin*, 9 Ala. 662, 684, it is said :

"And whether a party misrepresenting a fact knew it to be false, or made the assertion without any precise knowledge on the subject, is immaterial; for the affirmation of what one does not know, or believe to be true, is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false."

In *Munroe* v. *Pritchett,* 16 Ala. 785, the law is stated thus:

"From our own decisions, I think the conclusion may be deduced, that although in an action on the case to recover for the consequences resulting from a fraudulent misrepresentation of matter of fact, coming within the restrictions above laid down, the plaintiff must show that such misrepresentations were fraudulently made, yet it is not indispensable that the party making them should at the time have known them to be false. It is sufficient that he made them recklessly, not knowing them to be true, and for the purpose of influencing the other party in making the purchase. The seller, who owns the land, and who proposes selling it, must be presumed to know more about the lines, and what land is embraced within the tract, than the buyer. In that case, whether he did or did not, he assumed to know the fact that certain good land, which formed an inducement to the purchase, was included, and he asserted this as a fact, upon which the purchaser relied, and might well rely, in concluding the bargain. He thus induces the purchase, upon his false statement of matter of fact, and pockets the gains. Shall he, when sued, say, 'I did not know that I was telling an untruth?' It is sufficient that he misrepresented the fact, and did not care that he did so; in other words, that he asserted as true, and as a matter of knowledge, that which was untrue, and which he either knew nothing about, or knew to be untrue. Did the law allow the action to punish the untruth, and not as a compensation to the party injured by its consequences, then it would

be proper to make the action depend upon the *scienter;* but the action is for the injury sustained by reason of the reckless, false assertion of the vendor, which was calculated to deceive, and did deceive, the purchaser—consequences which to him are precisely the same, whether the vendor knew, or did not know, or care to know, that the assertion was false."

This court, in the well considered case of *M'Cormick* v. *Malin*, 5 Blackf. 522, says:

"Even admitting that Malin made the misrepresentation innocently by mistake—a supposition that his fair general character, perhaps, renders no more than just to him—this consideration does not prevent the application of the principle. The misrepresentation, nevertheless, took the complainant by surprise, and produced false impressions injurious to his interest. This, too, is a good cause of relief in a court of equity. 1 Story Eq. 201; *Turner* v. *Harvey*, Jacob, 169; 2 Br. Ch. R., cited in 1 Story Eq. 203, n. 6."

This court, in *Shaeffer* v. *Sleade*, 7 Blackf. 178, says:

"It is wholly immaterial in this case to inquire whether Matlack intentionally misrepresented the amount of profits derived from exhibiting the figures or not, because if his misrepresentations were innocently made by mistake, they operated as a surprise and imposition on Sleade as much as if they had been through design. *Ainslie* v. *Medlycott*, 9 Ves. 21; *Pearson* v *Morgan*, 2 Br. Ch. R. 388; *Burrowes* v. *Lock*, 10 Ves. 470."

This court, in *Reed* v. *Diven*, 7 Ind. 189, says:

"These representations were untrue; and whether they were the result of misapprehension or mistake, does not vary the case. In relation to this point we adopt the argument of the appellee: 'The sheriff assumed to know the facts and gave information on the subject; but whether he knew his statements to be false or not, the effect on the sale and the interest of Diven was the same.' They were calculated to make a false impression on the minds of bidders, and operate as a fraud upon the execution defendant."

The subject has been by no means exhausted, but we will

Frenzel *et al. v.* Miller.

make no further quotations from elementary writers or decisions. The quotations made will show the general current of authorities, and an examination of cases cited will furnish a reference to numerous other cases.

The following principles of law are fairly and logically deducible from the foregoing authorities:

1. To constitute a misrepresentation a ground of fraud for avoiding the contract, or to entitle the injured party to his action, it must be in regard to a material fact, operating as an inducement to the purchase, or the making of the contract, and upon which the purchaser or person making the contract had a clear right to rely; and the party complaining must have been actually deceived thereby; and, generally, such representation must not be mere matter of opinion, or in respect of facts equally open to the observation of both parties, and concerning which the party complaining, had he exercised ordinary prudence, could have attained correct knowledge. If a party blindly trusts, where he should not, and closes his eyes, where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, *volenti non fit injuria*.

2. If a person represents a thing to be true, when he knows it to be false, he is guilty of positive fraud.

3. If a representation be made of a matter material to the contract, which turns out to be untrue, to the damage of the party to whom such representation was made, and who relied on the same as true, such representation will have the force and effect of positive fraud in a proceeding to rescind the contract, or in an action for, or defence founded on, the fraud, whether the falsity of the representation was known to the party making it or not, on the ground that he who makes a representation as true, without knowing it to be true, is guilty of gross negligence and reckless conduct.

4. Nothing is more clear in equity than the doctrine that a bargain founded in mutual mistake of the facts constituting the very basis or essence of the contract, or founded upon

the representations of the seller, who is presumed to know whether the representations which he makes are true or false, material to the bargain, and constituting the essence thereof, although made by innocent mistake, will avoid it.   Mistake, as well as fraud, in any representation of a fact material to the contract, furnishes a sufficient ground to set it aside and to declare it a nullity.

The conflict in the decisions on this subject has been mainly produced by the nature of the action and the character of the court trying the cause.   The courts of equity would afford relief by reforming or rescinding a contract founded upon a mutual mistake of fact upon a material matter, although the misrepresentation was innocently made by mistake, while the courts of law would afford no remedy, in the absence of a warranty, unless there was either positive or constructive fraud.   This will explain the conflict in the two principal cases in this court.   The case in 16 Ind. was to recover damages for a false and fraudulent misrepresentation, while the case in 27 Ind. was a proceeding in equity to obtain a rescission of a contract.

There is no longer any reason why the decisions of this court should not be uniform and harmonious on this subject.   WORDEN, J., in delivering the unanimous opinion of this court, in *Potter* v. *Smith*, 36 Ind. 231, says:

"This may not have been the old rule in relation to many suits in equity, but by the code the distinction between actions at law and suits in equity is abolished, and it is provided, that 'there shall be in this State, hereafter, but one form of action for the enforcement and protection of private rights, or the redress of private wrongs, which shall be denominated a civil action.'   By the provisions of the code the plaintiff is entitled, on bringing his action, to whatever relief either law or equity would have afforded him, on the case made, before the distinction between them, in practice, was abolished.   The two systems are blended together, and either legal or equitable rights are to be enforced in the 'civil action' provided for.   So, on the other hand, may the

defendant set up to the action any matter of defence, either legal or equitable."·

It is quite obvious, from what has been said, that the instruction given was erroneous, and the one asked and refused was correct.

The appellants also complain of the refusal of the court to give the second instruction asked by them, which is in these words, namely:

"If the jury finds from the evidence that Voltz knew that defendants, at the time they purchased, believed that the engine, boiler, and machinery were in good running order, sound and fit for use, and if Voltz knew there were defects in said boiler and engine, which, with ordinary care, could not have been discovered, and of which facts defendants were ignorant, then it was the duty of Voltz to disclose the existence of such defects, and his silence, under such circumstances, would amount to a representation that the boiler and engine were sound, etc., and the defendants, in such case, are entitled to damages."

PARSONS, in treating of the doctrine of *caveat emptor*, says:

"One important and universal exception is this: The rule never applies to cases of fraud, never proposes to protect a seller against his own fraud, nor to disarm a purchaser from a defence or remedy against a seller's fraud. It becomes, therefore, important to know what the law means by fraud in this respect, and what it recognizes as such fraud as will prevent the application of the general rule. If the seller knows of a defect in his goods, which the buyer does not know, and if he had known, would not have bought the goods, and the seller is silent, and only silent, his silence is nevertheless a moral fraud, and ought, perhaps, on moral grounds, to avoid the transaction. But this moral fraud has not yet grown into a legal fraud. In cases of this kind there may be circumstances which cause this moral fraud to be legal fraud, and give the buyer his action on the implied warranty, or on the deceit. And if the seller be not silent, but produce the sale by means of false representations, then

the rule of *caveat emptor* does not apply, and the seller is answerable for his fraud. But the weight of authority requires that this should be active fraud. The common law does not oblige a seller to disclose all that he knows, which lessens the value of the property he would sell. He may be silent, leaving the purchaser to inquire and examine for himself or to require a warranty. He may be silent, and be safe, but if he be more than silent; if by acts, and certainly if by words, he leads the buyer astray, inducing him to suppose that he buys with warranty, or otherwise preventing his examination or inquiry, this becomes a fraud of which the law will take cognizance. The distinction seems to be—and it is grounded upon the apparent necessity of leaving men to take some care of themselves in their business transactions— the seller may let the buyer cheat himself *ad libitum*, but must not actively assist him in cheating himself." 1 Pars. Con. 578.

The leading English and American cases are collected and reviewed in note (*k*) on the above page of Prof. Parsons' valuable work, to which reference is made.

We are of the opinion that the law on this subject is correctly stated in the above quotation, and that it is fully sustained by the leading English and American adjudged cases. We, therefore, hold that the court committed no error in refusing to instruct the jury as requested in the second instruction asked.

The judgment is reversed, with costs, and the cause is remanded, with instructions to the court below to grant a new trial, and for further proceedings, in accordance with this opinion.

WORDEN, C. J.—I am of opinion that if a person make a representation, not amounting to a warranty, in good faith, believing it to be true, but which turns out to be false, such representation furnishes no ground of action against him, or defence to an action by him (save an action against him to rescind on the ground of mistake), because in such case there is a total absence of any foundation for the action or defence,

which is fraud.  I therefore dissent from so much of the foregoing opinion as asserts a contrary doctrine.

*H. W. Harrington, M. K. Rosebrough,* and *W. D. Wilson,* for appellants.