# FIRST NATIONAL BANK *v.* FOX.

---

BILL OF EXCEPTIONS; CONSOLIDATION OF ACTIONS; PRINCIPAL AND AGENT; BANKS AND BANKING; BILLS AND NOTES; CONTRACTS; PAROL EVIDENCE; FRAUD; PLEADING; ESTOPPEL.

1. Under the practice existing in the District of Columbia of embracing all exceptions within a single bill, an entire bill of exceptions will not be stricken from the record merely because it contains some exceptions in violation of rule 5, sec. 4, of this court, but those exceptions properly before the court will be considered, and those not within the rule will be disregarded. (Construing sec. 921, Rev. Stat. U. S. Comp. Stat. 1901, p. 686, and citing *Bowen* v. *Howenstein,* 39 App. D. C. 167.)

2. The supreme court of the District of Columbia acts within the discretion reposed in it by sec. 921, Rev. Stat., and properly consolidates

two cases where there are separate plaintiffs against a single defendant to recover on separate notes given at the same time and in the same transaction, and the defense to the notes is the same, and the witnesses and testimony are practically the same in both cases, and in selecting the jury the parties are each accorded the full number of challenges.

3. Where a bank which held collateral to secure the payment of a promissory note discounted by it, in order to evade a law which prohibited it from suing as an innocent holder an indorser, while holding security, delivered the collateral to its attorney, the latter is its agent, and his possession is that of the bank.

4. A bank which discounted a note before maturity without notice of an alleged defense against its indorser, and thereafter, with full notice of such alleged defense and for the exclusive purpose of avoiding the same, entered into an arrangement with its indorser to have suit brought in the name of the bank, through his attorneys, at his expense, and for his sole benefit, having first been placed by him in a position to be paid without necessity of suit and regardless of the result of the proposed litigation,—sues as a mere accommodation to the indorser, and not as an innocent holder, although it so acquired the note, and the action is therefore subject to any defense available against the indorser.

5. Although a contract is in writing and its terms cannot be varied by parol evidence, such evidence of false and fraudulent representations made to induce the contract is admissible to defeat its enforcement by one of the original parties, or one substituted for the purpose of excluding the defense of fraud.

6. Fraud as a defense to an action on a written contract is available without pleading it specially.

7. The vendee of a steam yacht, when sued in an action of assumpsit on a promissory note given as part of the purchase price of the vessel, is not estopped to defend on the ground of fraud in the procurement of the contract of sale by a subsequent agreement between himself and the vendor for the delivery of the vessel by the latter, which provides that nothing contained in it shall in any way affect any other agreement between the parties, and which was entered into at a time when the vendee was not fully advised of the alleged fraud of the vendor in the making of the original contract.

8. Where, in an action of assumpsit on a promissory note given as part of the purchase price of a steam yacht, the defense was fraud in the procurement of the contract of sale, evidence by defendants of the price for which the vessel sold at a judicial sale a few weeks after its

delivery to them, and at a private sale about a year later, two occasions not far remote from the date of the transaction in issue, and of its condition about eighteen months after its sale to them, was properly admitted as tending to establish the value of the vessel, and its condition at the time of the sale, it appearing that no repairs had been made on it during the period covered by the evidence.

No. 2437.  Submitted January 14, 1913.  Decided May 26, 1913.

HEARING on a motion to dismiss or affirm a judgment for the defendant of the Supreme Court of the District of Columbia, upon verdict, in an action upon a promissory note, a motion by the appellee to strike the bill of exceptions from the record having theretofore been granted by this court.

*Order striking out the bill of exceptions set aside, the appeal considered on its merits, and the judgment affirmed.*

The facts are stated in the opinion.

*Mr. A. S. Worthington, Mr. Henry F. Woodward,* and *Mr. C. S. Frailey* for the appellant.

*Mr. J. J. Darlington* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This cause was originally submitted upon the merits and upon a motion by Edmund K. Fox, appellee, to strike the bill of exceptions from the record, for the reason that it was prepared in violation of sec. 4, rule 5, of this court. Upon consideration, the court struck out the bill of exceptions (39 App. D. C. 477), and we are now confronted with a motion to affirm or dismiss.

More mature reflection convinces us that, while it is undoubtedly within the power of the court to strike a bill of exceptions from the record for failure to comply with the rule, a more just and equitable practice can be adopted which will equally well accomplish the enforcement of the rule. In this view of

the case, the order heretofore made striking the bill of exceptions from the record will be vacated and set aside, and the case, in so far as proper under the rule, will be disposed of on its merits.

At common law, each exception was preserved in a separate bill of exceptions, but under our practice all exceptions are embraced within a single bill. It may well be that a bill may contain some exceptions in exact compliance with the rule, and others in violation of it. We think, therefore, that in such a case those exceptions properly before us should be considered, and those not within the rule should be disregarded. *Bowen* v. *Howenstein,* 39 App. D. C. 167.

This is an action in assumpsit upon the first of three promissory notes, bearing date August 17, 1908, made by defendant Umbenhauer to the order of defendant Fox, and indorsed by him to one Orren G. Staples. One of the notes for $4,000, payable four months after date, was indorsed by him to the appellant bank, plaintiff below. The notes were given in consideration of the purchase price of a vessel known as the Yacht Idler, sold by Staples to defendants. The defense is interposed that the sale was induced by the fraudulent representations of Staples, and that plaintiff bank is not such an innocent holder in due course as to exclude the defense against it. The jury returned a verdict for defendants, and from the judgment this appeal was taken.

Forty-seven separate assignments of error are set forth by counsel for appellants, which, however, are grouped under seven heads:

1. In consolidating this case with a similar suit against the same defendants brought by B. F. Edwards, to whom another of the notes had been indorsed.

2. In admitting against the plaintiff any evidence of representations alleged to have been made at the sale of the vessel.

3. In admitting testimony of oral statements and alleged warranties not found in the written contracts of sale of the vessel.

4. In ruling in substance that the oral statements alleged

were, if untrue, sufficient to defeat the action, and that the defendant was not bound to ordinary care to inform himself in the premises.

5. In ruling that the Montreal agreement made after defendant had been informed that the vessel was not seaworthy or equipped for ocean service did not so confirm the purchase as ·to estop defendant from the defense made by him.

6. In admitting evidence of the sales made of the vessel after her delivery in Philadelphia as agreed, and of her condition eighteen months and more after the transaction here in question.

7. In the court's rulings upon other incidental questions of evidence and of instructions, as pointed out in the assignment of errors.

No error was committed in consolidating the two cases in a single trial. Section 921, Rev. Stat. U. S. Comp. Stat. 1901, p. 686, provides: "When causes of a like nature or relative to the same question are pending before a court of the United States, or of any Territory, the court may make such orders and rules concerning proceedings therein as may be conformable to the usages of courts for avoiding unnecessary costs or delay in the administration of justice, and may consolidate said causes when it appears reasonable to do so." There were separate plaintiffs against a single defendant to recover on separate notes given at the same time and in the same transaction. In this case, the cashier and attorney of the plaintiff bank testified to the circumstances under which it acquired the note. In the *Edwards Case,* Edwards testified regarding his possession of the note sued upon. Aside from these witnesses and the testimony of Staples, the evidence of about forty witnesses is exactly the same in both cases. The defense to the notes is the same in both cases. In selecting the jury the parties were each accorded the full number of challenges. In no particular can the consolidation be held to have prejudiced plaintiff, and no exception to the consolidation was taken by Edwards. The court acted clearly within the discretion reposed in it by the statute.

That plaintiff was not in position to bring this suit as an innocent holder of the note in due course is evidenced by the testimony of Northup, the cashier of the bank. It appears that before the maturity of the note, Staples wrote Northup the following letter: "The note you discounted for me, with Fox's indorsement, will be due on the 18th of this month. I wish you would send it to the Riggs National Bank for collection. I presume you have no correspondents here. I want to be sure it is protested, as I do not think it will be paid. They are trying to do their best to get out of the purchase of the Idler, but my attorneys tell me there is no possible chance, as they have sworn they are the owners and they bought her, and had all the chances to examine her in every possible way, and if the note is not paid, I would like to have you put it in the hands of A. S. Worthington and Henry F. Woodward, my attorneys here, for collection, and want you to sue it in your name at once. If necessary I would send the same amount to your bank, or send you a note with my indorsement. They have not treated me at all well here, and I want to get my pay. Mr. Avery, at Alexandria bay, can tell you what they have attempted to do with me. Of course, I expect to stand by you in every way, and you will have no loss whatever, but to protect myself, I want this note sued at once, and I want to be sure it is protested. Mr. Fox is a large real estate dealer here, one of the largest in the city, and I think there is no doubt about his responsibility."

Northup further testified that while the money referred to in the letter was not advanced by Staples, it would have been if the bank had insisted upon it; that the bank had advanced nothing toward the expenses of conducting the present suit; that the bank had received, under an agreement, $10,500 in bonds, worth par, from Staples, which were to answer as security for the debt and costs and as collateral for the payment of the note; that under an agreement with Staples the bonds were turned over to one Phelps, the attorney for the bank, for the reason that, under a law of New York, "when a bank holds security, they are not entitled to sue the indorser

and collector as an innocent holder, and they wanted to fix it in some way so that they could sue Fox and still hold the security; and that witness left it entirely to Phelps, who was the attorney for the bank." Phelps being the agent of the bank for this purpose, the bonds were in law in the possession of the bank. Under this state of fact, which was submitted to the jury, and found to be true, plaintiff brought the suit merely as an accommodation to Staples, and not as an innocent holder to recover its money. It was therefore subject to any defense that was available against Staples.

But it is urged that oral testimony of alleged false representations by Staples was inadmissible, since the contract was in writing. Staples executed to defendants a bill of sale of the yacht in the usual form, with the usual warranty as to title. The evidence of false representations was not offered to vary the terms of a written contract, but to show that the contract itself was induced by the fraudulent representations of the vendor to vendees, who testified that they had no knowledge of the value of a vessel of this sort; were inexperienced in dealing in or handling that sort of property, and relied entirely upon the representations of Staples. While it is well settled that a covenant of warranty cannot be added to a written agreement by parol evidence, it is equally well established that false and fraudulent representations made to induce a contract, evidenced by a written agreement, may be introduced to defeat its enforcement. The elementary principle that fraud vitiates whatever it touches is not overruled by the doctrine that a written contract may not be varied by evidence of contemporaneous oral stipulations. Where a party is fraudulently induced to enter into a contract, the fraud cannot be rendered successful by reducing the contract to writing. When an innocent party is seeking to enforce the contract, relief may be had against the party perpetrating the fraud by a separate action for deceit, but where the original party, or one substituted for the purpose of excluding the defense of fraud, is seeking the enforcement of the contract, parol evidence of the fraudulent representations used to induce the defendant to make the con-

tract is admissible as a defense.   *Withers* v. *Greene,* 9 How. 213, 13 L. ed. 109; *Van Buren* v. *Digges,* 11 How. 461, 13 L. ed. 771; *Stillwell & B. Mfg. Co.* v. *Phelps,* 130 U. S. 520, 32 L. ed. 1035, 9 Sup. Ct. Rep. 601; *Groff* v. *Hansel,* 33 Md. 161; *Field* v. *Austin,* 131 Cal. 379, 63 Pac. 692; *Frenzel* v. *Miller,* 37 Ind. 1, 10 Am. Rep. 62.   The defense is available without pleading it specially.   *Bell* v. *Sheridan,* 21 App. D. C. 370.

It is insisted that what is known in this case as the Montreal agreement. so confirmed the contract for the purchase of the vessel as to estop defendants.   That agreement was as follows:

Montreal, August 27th, 1908.

I, Orren G. Staples, former owner of the steam yacht "Idler" recently sold to Wm. W. Umbenhauer, of Philadelphia, Pennsylvania, and Edmund K. Fox, of Washington, District of Columbia, do hereby certify that in consideration of the purchase price and the sum of $1 in lawful money, I hereby agree to deliver in Philadelphia, Pennsylvania, in as good condition as she now is (natural wear and tear excepted), said steam yacht "Idler," and save the said purchasers harmless of any loss occasioned to yacht or crew; and in the event that said boat is lost at sea, or any trouble should arise from her inspection certificates or any legal forms required, or should any suits be filed by sailors or any members of the crew or any other person or persons, then, in any of said events, I am to be liable for any and all such losses or damages, as the boat is to be delivered to the said owners in the port of Philadelphia, Pennsylvania, at my liability and responsibility, according to the above, and a certificate of inspection is to be furnished by me to deliver said yacht to the port of Philadelphia.

I further agree to. pay the sum of three hundred dollars ($300) in cash towards defraying the expenses of taking the said yacht from Quebec to Philadelphia, Pennsylvania.

I further agree that Captain L. G. Davis is in my employ, and that I am to pay his wages during the voyage in question,

and that this agreement shall not in any way affect any previous agreement the said parties have made.

Signed and sealed in the presence of witnesses this twenty-seventh day of August, A. D., 1908.

(Signed)    O. G. Staples.

W. W. Umbenhauer.

E. K. Fox.

Witness:

(Signed)    A. William Sperry.

This agreement cannot be held to constitute a waiver of any defense defendants might have to the original contract, since it clearly appears from the evidence that defendants were not at the time of its execution fully advised of the alleged fraud perpetrated by Staples in inducing the making of the original contract. Besides, it is expressly stated "that this agreement shall not in any way affect any previous agreement the said parties have made." It was nothing more than a separate, independent agreement on the part of Staples to deliver the vessel in Philadelphia, and to be liable for any loss or damage sustained on the journey. It had no relation to the false and fraudulent representations alleged to have been made by Staples as an inducement for the sale.

Evidence was admitted of the price realized for the yacht at a judicial sale a few weeks after its arrival in Philadelphia; of the price for which it was sold at private sale about a year later, and of the condition of the yacht eighteen months after the sale to defendants. The admission of this evidence is assigned as error. It appears that no repairs or changes were made on the vessel during this period. Evidence, therefore, as to its condition, was competent as tending to establish its condition at the time of the sale, and evidence of the price for which it sold on two occasions not remote from the date of the transaction in issue was competent on the question of value.

The instructions complained of and the remaining assignments of error relate to the sufficiency of the evidence to support the verdict. For the reasons stated in our former opinion, these

exceptions will not be considered. The judgment is affirmed with costs.                                   *Affirmed.*

A motion by the appellant for a writ of error to the Supreme Court of the United States was denied June 5, 1913; but the mandate was stayed until further order June 5, 1913.