Timmis *v.* Wade.

doing of a thing merely collateral to the work undertaken, but was the doing of a thing contracted for.

The judgment is affirmed.

Filed April 28, 1892; petition for a rehearing overruled Sept. 17, 1892.

---

No. 556.

## TIMMIS *v.* WADE.

DECEIT.—*Action for.*—*False Representations Concerning Soundness of Horse.*—*Evidence.*—The defendant bartered a horse to the plaintiff, representing that some time prior to the sale "a rectal tumor, caused by the bursting of a small blood vessel, had been removed," but that the horse had recovered from this and was "as sound as ever." The evidence clearly disclosed that the horse was not sound; that the "rectal tumor" resulted from a virulent constitutional disease, which rendered the horse practically valueless, and from which he soon after died, and that the defendant knew, or ought to have known, the horse was unsound at the time he parted with him. The plaintiff purchased the horse, relying upon the representation as to its soundness and believing the same to be true.

*Held,* that the plaintiff was entitled to recover in an action for deceit.

SAME.—*Instruction to Jury.*—An instruction to the jury in such an action was correct, which informed them that they should use their "own judgment" in determining whether they would, from all the facts and circumstances proven in the case, infer that the defendant was guilty of the fraudulent conduct charged against him. *Densmore* v. *State,* 67 Ind. 306, and *Wright* v. *State,* 69 Ind. 163, distinguished.

From the La Grange Circuit Court.

*J. E. McCluskey, J. W. Hanan* and *R. Lowry,* for appellant.

*J. S. Drake* and *F. D. Merritt,* for appellee.

Fox, J.—This was an action for deceit, brought by one Joseph B. Wade against William Timmis, in the La Grange Circuit Court, concerning a stallion bartered by said Timmis to said Wade.

The facts involved in the case can as well be stated by reciting the material allegations in the complaint as otherwise : They are as follows :

" * * * That, on the 31st day of March, 1890, the plaintiff was the owner of a tract of land in the town of La Grange, which he bargained and sold to defendant for the sum of eight hundred dollars. The defendant desired plaintiff to take in payment for said land, three hundred dollars, and a stallion, which the defendant then owned, at five hundred dollars ; that for the purpose of inducing plaintiff to take said stallion at the price of five hundred dollars, the defendant falsely and fraudulently represented to the plaintiff that said horse was sound ; that said horse had, some time prior to said time, a rectal tumor, caused by the bursting of a blood vessel, and that said tumor had been removed, and said horse was cured and as sound and good as ever; that said horse was of great value, well known and popular as a breeding horse ; that for breeding purposes said horse was worth five hundred dollars; that said horse was good for, and would secure a hundred mares that season ; that said horse would get one hundred mares without removing him from the barn ; that plaintiff could rely on that many mares, and that said horse could get good colts, and that said horse did not often fail to get a colt; that plaintiff relied on said representations, and believed them to be true, and was induced thereby to accept, and did accept, said horse at and for the sum of five hundred dollars ; * * * that all of said representations were false ; that while the said horse had the appearance of being sound, he was then in fact diseased and worthless, which defendant well knew ; that he was incapable of serving a mare, and was wholly worthless for breeding purposes ; that said horse had internal diseases known to defendant and not known to plaintiff, which rendered him wholly worthless for any purpose whatever ; that, on the 23d day of May, 1890, said horse died from said diseases."

Having tested the complaint by a demurrer, the defendant below filed a general denial thereto.

There was a trial by jury, which resulted in the rendition of a verdict of two hundred dollars in favor of the plaintiff.

The court overruled a motion for a new trial.

The evidence given in the cause, and the instructions given by the court to the jury, are made parts of the record by bills of exception.

The only error assigned in this court is the action of the court below in overruling the motion for a new trial.

The reasons contained in the motion for a new trial, which counsel present in their argument for the consideration of this court, are as follows:

"1st. Because the verdict of the jury was contrary to law.

"2d. Because the verdict of the jury was contrary to the evidence, and not supported by sufficient evidence.

"3d. Because the court erred in giving to the jury, on its own motion, instructions one, two and three, respectively'.'

Counsel for the appellant, in an elaborate brief, earnestly insist that the judgment of the court below should be reversed for the reason that the verdict of the jury was contrary to the evidence. In support of this proposition our attention is directed to the following cases: *Crossley* v. *O'Brien*, 24 Ind. 325; *Ray* v. *Dunn*, 38 Ind. 230; *Roe* v. *Cronkhite*, 55 Ind. 183; *Pittsburgh, etc., R. W. Co.* v. *Morton*, 61 Ind. 539; *Riley* v. *Boyer*, 76 Ind. 152; *City of Warsaw* v. *Dunlap*, 112 Ind. 576. Having read these cases, as well as the evidence as it appears in the record, we are unable to agree with counsel that the verdict of the jury was "not sustained by the evidence." The well established rule that if the evidence given at the trial fairly tends to support the verdict of the jury an appellate court will not interfere, is familiar to the profession. The theory of the cases, as we understand them, simply resolves itself into this: If the evidence at the trial, given upon either side, amounts to

proof of the matters in issue, in the absence of contradiction, or if in case of contradiction the question simply resolves itself into one concerning the credibility of witnesses, then the judgment of the jury as expressed in their verdict will not be disturbed upon appeal.

In this case a number of the representations made, as set forth in the complaint, standing alone, would not be actionable. Ordinarily, mere expressions of opinion concerning value, utility, future use and the like, do not in law constitute actionable fraud, though they be false and expressed in strong and positive language. *Neidefer* v. *Chastain*, 71 Ind. 363; *Jagers* v. *Jagers*, 49 Ind. 428; *Adkins* v. *Adkins*, 48 Ind. 12. " Nor will it aid the pleading to simply characterize the representations fraudulent." *McComas* v. *Haas*, 93 Ind. 276. A representation to be fraudulent in law must be made concerning a material fact upon which the party to whom it is made has a clear right to and does rely, and one that misleads him to his injury. If the parties stand equal, and have an equal knowledge concerning the subject, of the representation, then no legal injury results, however false the representation may be. But if a party to a contract, for the purpose of inducing the person with whom he is dealing to act, make a representation concerning a material fact which he knows to be false, and such person relying thereon, and being induced thereby, does act to his injury, the law affords him a remedy. The law as held in this State very justly goes further than this. " Where a party professing to have knowledge falsely represents a thing to exist, and makes the representation for the purpose of securing an undue advantage over the person with whom he is contracting, he is guilty of fraud, although it may not appear that he knew that his statement was false." *Roller* v. *Blair*, 96 Ind. 203; see also *Frenzel* v. *Miller*, 37 Ind. 1; *Bethell* v. *Bethell*, 92 Ind. 318; *Brooks* v. *Riding*, 46 Ind. 15.

It is charged in the complaint that at the time the horse was bartered to the appellee the appellant represented that

Timmis v. Wade.

the horse was sound; that sometime prior thereto "a rectal tumor, caused by the bursting of a small blood vessel, had been removed," but that the horse had recovered from this and was "as sound as ever." It is very evident that this representation was concerning a material fact, and was made for the purpose of inducing the appellee to trade for the horse. The evidence clearly discloses the fact that the horse was not sound at the time; that the "rectal tumor" was not caused "by the rupture of a small blood vessel," but resulted from a virulent constitutional disease, which rendered the horse practically valueless, and from which he soon after died.

We think it sufficiently appears from the evidence that the appellant knew or ought to have known the horse was unsound at the time he parted with him. He procured a surgeon to remove the tumor, and had owned the horse for five years. Dr. Cummings, the surgeon who removed the tumor, was a witness at the trial, and testified, among other things, that he knew that the tumor was not caused by the rupture of a blood vessel, "that it was caused by a collection of coloring matter of the hair," and that he told the appellant so at the time, but that appellant insisted that it was caused by a ruptured blood vessel. The witness, Dinsmore, testified that the next morning after the operation the appellant told him that he had heard "that the tumor was liable to come back again; that Cummings said that the same cause might bring it back." After Wade got the horse appellant told this witness "that he had traded with Wade, but that Wade was trying to kick out; but that Wade would find that he was too sharp for him; that whenever a horse began to fail he got rid of him." Taking the evidence altogether, it convinces us that the representations made by the appellant were made for the purpose of inducing the appellee to believe the horse was sound; that the "rectal tumor" was the result of a mere local disturbance and not a disease; that the tumor had been removed and the horse cured; that

the horse at the time was unsound and worthless; that the appellee, relying upon such representations, paid full value for the horse; that he was induced so to do by the representations made to him by the appellant. We therefore conclude that the evidence not only fairly tends to support the verdict but fully justifies it.

Objection is made to the third instruction given by the court below to the jury. This instruction reads as follows:

"3. You are the exclusive judges of fact, of the bearing and weight of the evidence, and of the credibility of the witnesses. The charge against the defendant being one of fraud ought not to be lightly inferred. Still it need not be proved by direct or positive evidence; if that were the case, fraud could scarcely ever be proved. You may infer fraud from the evidence and circumstances shown in the case. On this point you must be guided by your own judgment and from all the evidence given in the cause and matters and circumstances shown thereby. You must find whether or not the defendant is guilty of the fraudulent conduct aforesaid. The burden is on the plaintiff to show the fraudulent charge alleged by a preponderance of the evidence. If you find for the plaintiff, you will assess his damages at a sum equal to the difference between what the horse was in fact worth and what he would have been worth if he had been sound as represented, to which you may add interest from the time this action was brought."

Counsel insist that the portion of this charge which directs the jury that they must " be guided by their own judgment " brings it within the rule laid down in *Densmore* v. *State*, 67 Ind. 306. In that case the court, among other things, instructed the jury that in making their verdict, " What is called common sense is, perhaps, the juror's best guide." The Supreme Court held this to be erroneous for the reason that " common sense " was not " a better guide to them in the discharge of those duties than the rules of law " in determining the guilt or innocence of the defendant.

Also, for the further reason that the term " common sense " was indefinite in its meaning ; that each juror might have his own standard in its application, and thus produce endless conflict. A similar ruling was made in the case of *Wright* v. *State*, 69 Ind. 163. In this last case, however, the court makes the following statement: " If the court had expressly limited its commendation of common sense as a guide to so much of the case as had reference to the value and weight of the evidence only, we might not have seen any objection to that part of the instruction." The ruling in these cases does not apply with any force to the case at bar. Taking the word " judgment," as used by the court in the instruction complained of, to mean a decision resulting from the mental process of reasoning, or that faculty of the mind by which a person is enabled by a comparison of ideas or an examination of facts to arrive at a just conclusion in searching for the truth, we are unable to understand how the jury could have been misled by the instruction. Taking the charge as a whole,we think the jury were, in effect, told that they should use their own judgment in determining whether they would, from all the facts and circumstances proven in the case, infer that the defendant below was guilty of the fraudulent conduct charged against him. This is precisely what they should have done. In jury trials jurors are selected for the very purpose of using their " own judgment " in determining questions of fact, untrammelled by the judgment of others.

Objection is also made to that portion of the charge in question which instructed the jury that they might add interest to any amount they should find in favor of the plaintiff from the time the suit was brought. Without deciding whether, as an abstract proposition, interest is allowable in such cases, it is apparent from the record that the appellant was not in any wise injured by this part of the instruction. After the jury had resolved to find a verdict in favor of the plaintiff, it is evident from the testimony that they should have as-

sessed his damage at least in the sum they did if not for the full value of the horse.

The judgment is affirmed, with costs.

Filed Sept. 14, 1892.