Filed June 20, 1894.

---◆---

No. 1,020.

## BLOOMER, ADMINISTRATRIX, *v.* GRAY.

REPRESENTATIONS.—*Right to Rely on.*—*Fraud.*—*Barter.*—Representations as to the character and quality of the machinery in a mill, the custom of the mill, and its earnings, made by the owner to one with whom he was seeking to barter the mill, were of and concerning things peculiarly within the knowledge of the mill-owner, and upon which such other person had a right to rely.

EVIDENCE.—*Fraudulent Representations.*—*Value of Property.*—*Barter.*— In an action to recover damages because of fraudulent representations made pending a barter of property, the value of the property is provable.

SAME.—*Fraudulent Representations.*—*Mental Condition.*—In such case, the mental condition of the plaintiff was provable for the purpose of showing his susceptibility to the representations.

SAME.—*Fraudulent Representations.*—*Mental Condition.*—The jury having charge of the question of fraud, must determine the same from all the facts and circumstances, and were entitled to know not only the representations, but the probable effect of the same upon the mind of the plaintiff.

From the Wabash Circuit Court.

*H. C. Pettit* and *A. Taylor*, for appellant.

*J. S. Slick* and *N. G. Hunter*, for appellee.

Ross, J.—This action was originally commenced against one Joseph Bloomer. During the progress of the suit, and before the trial, Joseph Bloomer died, and

his widow, Phoebe E. Bloomer, who was appointed administratrix of his estate, was substituted as defendant.

The material facts alleged in the complaint are, substantially, as follows: That the plaintiff was the owner of 160 acres of land in Grant county, Indiana, of the value of $6,400, and the decedent, Joseph Bloomer, was the owner of mill property in Wabash county, Indiana, "consisting of a grist mill, $3\frac{54}{100}$ acres of land, mill machinery and dam."

That the decedent—intending to cheat and defraud the plaintiff, who was weak-minded, and in order to induce him to execute to decedent a deed for his lands—falsely and fraudulently represented to plaintiff that he was the owner of the grist mill, land, and dam aforesaid, which were of the value of $6,400; that the mill had a large amount of valuable machinery in it, which was in first-class condition and needed no repairs; that the mill dam connected with and a part of the mill property was nearly new and was in good repair.

"That there was a valuable good-will connected with said mill, and that said mill was very valuable on account of its extensive custom trade in the grinding of corn and wheat and the taking of toll therefrom; that said custom trade of said mill was worth more than five dollars per day in excess of all expenses; and, further, that said mill had never earned for defendant (decedent) less than the sum of five dollars per day."

It is also alleged that these representations were false, and known by decedent to be false at the time he made them, and were made by him for the purpose of defrauding the plaintiff; that the plaintiff, relying upon such representations, exchanged his lands for the mill property. It is then averred that the mill property was not worth $6,400, but was entirely worthless; that the mill did not contain a large amount of valuable mill machin-

ery, and that the machinery therein was not in good condition and repair, but was old, worn out and of no value whatever; that the dam was worn out and greatly out of repair, the timbers were rotten and the dam useless; that the mill did not have a valuable good-will, neither did it have an extensive custom trade, but in truth and fact, had no custom trade; that, in fact, the mill had been abandoned by decedent on account of the want of trade.  There are also the necessary allegations as to his damage, etc.

The appellant assails the sufficiency of the complaint, insisting that there are no facts alleged showing "why the plaintiff could not have known by exercising reasonable intelligence and caution the true condition of the mill and mill property, whether or not it was of the value of $6,400, or that it contained valuable machinery; that the machinery was in first-class condition; that it needed no repairs; that the dam was valuable, nearly new, and in good repair, and that the mill had a good-will, extensive custom and great earnings;" that if the alleged representations were false, they were facts, open and notorious, and of such a character as the decedent must take notice of.

"It is a mistaken assumption that a false representation by one of the parties to a contract puts the other *on inquiry* as to its truth.  Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual engagement; and he is under no obligation to investigate and verify statements, to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith."  *Jones* v. *Hathaway*, 77 Ind. 14.

However, it is not every representation, although false and misleading, that entitles a party to recover therefor.

In the case of *Gordon* v. *Parmelee,* 84 Mass. 212, the court says: "Assertions concerning the value of property which is the subject of a contract of sale, or in regard to its qualities and characteristics, are the usual and ordinary means adopted by sellers to obtain a high price, and are always understood as affording to buyers no ground for omitting to make inquiries for the purpose of ascertaining the real condition of the property."

If the representations are concerning the market value of the property; its condition and special fitness for particular uses, which are only matters of opinion and estimate, as to which men may differ, their falsity can create no liability. *Conant* v. *Nat'l State Bank, etc.,* 121 Ind. 323.

But if the representations are concerning matters peculiarly within the knowledge of the party making them, and relate to the condition or adaptability of the property sold, and are of such character that the truth or falsity can not be readily ascertained, such representations, if not mere belief or opinion, if false, create a liability as against the party making them.

Among the many cases decided in this State defining this rule are the following: *Timmis* v. *Wade,* 5 Ind. App. 139; *Hoffa* v. *Hoffman,* 33 Ind. 172; *Campbell* v. *Frankem,* 65 Ind. 591; *Dodge* v. *Pope,* 93 Ind. 480; *West* v. *Wright,* 98 Ind. 335; *Ledbetter* v. *Davis,* 121 Ind. 119.

The representations as to the character and quality of the machinery, custom of the mill and its earnings, were of and concerning things peculiarly within the knowledge of the decedent, and upon which the appellee had a right to rely. We think the complaint states a good cause of action.

The second error assigned is: "The court erred in overruling the motion for a new trial."

Several reasons were assigned in the motion asking for a new trial, as follows: First, that the court erred in giving each of the instructions asked by the plaintiff; second, in giving each of the instructions given on the court's own motion; third, that the verdict of the jury is not sustained by sufficient evidence; fourth, that the verdict of the jury is contrary to law; fifth and sixth, errors in the admission of evidence.

The appellee was permitted, over the objection of the appellant, to prove the value of the property deeded by him to the decedent. In this there was no error.

It is next urged that the court erred in permitting the witness Jacob Sohn to testify as to the mental condition of the appellee at the time the trade was made.

After showing how long the witness had known the appellee, the following question was asked him: "Now, to——, now you may tell the jury what the fact is as to his being a weak-minded or strong-minded man in the fall of 1885?" To this question the appellant objected; the objection was overruled and an exception saved. The witness then answered as follows: "He was weak-minded."

We fully concur in the statement of counsel for the appellant, that the *gravamen* of the action is not to recover on account of the weak-mindedness of the appellee, but we can not for that reason say that this evidence was not competent; on the contrary, we think it was proper for the purpose of showing his susceptibility to the representations of the decedent. The representations made, if false, would have created a liability against the decedent, whether the appellee was weak-minded or not, and to show that he was weak-minded did not increase the liability or entitle him to a recovery which otherwise ·

he did not have.. The fraud consisted in misleading the appellee and then taking advantage of him after he had been thus deceived. Any fact which tends to throw light on the manner in which the artifice was perpetrated is proper. True, the wrong done was no greater on account of appellee's weak mental condition, yet he was probably more susceptible to the wiles and cunning of the artful than if his mental faculties were strong and unimpaired. The jury were to determine the question of fraud from all the facts and circumstances, hence were entitled to know not only what the representations were which the decedent made, but what the probable effect of the same was upon the mind of the appellee, and what influence, if any, they had upon his making the trade.

·The court's instructions to the jury were very full, evidently covering every necessary branch of the case. These instructions, considered as an entirety, stated the law correctly, and while in some of them there are statements which, standing alone, may be technically inaccurate, they could not have misled the jury.

After reading the evidence and applying the instructions of the court, recognizing the right of the jury to weigh the evidence and draw all the necessary inferences of fact therefrom, we think the verdict of the jury is sustained by sufficient evidence. Although juries have no right to infer fraud when there is no evidence from which such an inference naturally arises, yet this court can not disturb a verdict when there is any evidence, however slight, from which such an inference may be legally drawn. The trial court stands in a position to review the acts of the jury, and it is its duty to see that the verdict is in consonance with the preponderance of the evidence, but this court must accept the rulings of the trial court as final where a conflict exists in the evidence.

Actions of this character are often devoid of merit, and

the evidence upon which a recovery is allowed should be scrutinized with very great care by the trial court. As to the merit or demerit of this case, we are not called upon to express an opinion.

The trial court having passed upon that question, we can not disturb its ruling.

Judgment affirmed.

Filed June 6, 1894.