MERCHANTS NATIONAL BANK OF MASSILLON, OHIO
v. NEES, ET AL.

[No. 8,758. Filed November 2, 1915. Rehearing denied June 2, 1916.]

1. COURTS.—*Record.*—*Nunc Pro Tunc Entries.*—*When Made.*— As a general rule a *nunc pro tunc* entry can be made only where there is some memorial or other minute of the transaction in the case from which what actually took place in the prior proceeding can be clearly ascertained or known; and parol evidence alone is not sufficient to authorize a *nunc pro tunc* entry or to change a record after the proceedings have ceased to be *in fieri*, and after the term at which the record was made.   p. 296.

2. APPEAL.—*Review.*—*Briefs.*—*Specifications of Error.*—The court is warranted in refusing to consider instructions where the criticism to the giving or refusing to give such instructions is very general and by abstract propositions of law.   p. 296.

3. TRIAL.—*Instructions.*—*How Construed.*—In determining whether there was error in the giving or refusing to give instructions, the instructions given must be considered as a whole.   p. 296.

4. APPEAL.—*Briefs.*—*Specifications of Error.*—Where appellant's brief, in its points and authorities, fails to direct any proposition to the overruling of the motion in arrest of judgment and the same is not otherwise discussed, no question as to the alleged error is presented to the court for its consideration.   p. 297.

Merchants Nat. Bank *v.* Nees—62 Ind. App. 290.

5. Witnesses.—*Cross-Examination.—Discretion of Court.*—Where in an action on notes, it was disclosed by the evidence that there were two sets of notes involved in the transaction, one set having been retired by the issuance of new notes, the court refused to permit a witness, on cross-examination, to answer, after having testified that there had been no accrued interest charged on the old notes at the time the new notes were executed, whether "the interest was thrown off in consideration of the execution of the new notes," such ruling was not erroneous, as the scope of a cross-examination is largely within the discretion of the trial court, and for the further reason that the testimony of the witness substantially covered the information sought to be elicited by the question.    p. 297.

6. New Trial.—*Motion for.—Grounds.—Misconduct of Judge.*— The conduct of the trial judge in expressing to one of the jurors his approval of the verdict of the jury can not be presented to the appellate court in a motion for a new trial, as the alleged misconduct does not come within the rule specifying what causes an alleged error may be included in such motion, for it is only error that can be rectified by the granting of the motion for a new trial that can be assigned as causes therefor.    p. 298.

7. Appeal.—*Necessity of Objections.—Waiver of.—Presence of Judge.—Conduct of Trial.*—While the better practice requires the visable presence of a presiding judge at all times during the actual progress of the trial, yet the fact that the judge absented himself temporarily from the court room on business connected with the trial on two occasions during the argument to the jury is not available error where there were no objections made at the time either to his absence or to argument of counsel and where the record fails to show that such absence was in any way prejudicial to the complaining party, as it is the rule in this state that misconduct of any one connected with the trial not affecting the jurisdiction of the court when acquiesced in without objection is waived.    p. 298.

8. Sales.—*Warranties.—Implied Warranty.—Answer.—Sufficiency of.*—A paragraph of answer, based upon a breach of the warranty, which avers, in substance, that the vendor, the manufacturer, sold the vendees a traction engine and a number of wagons, and that it knew the purpose for which the outfit was intended to be used and that it was worthless for such purpose, states a defense sufficient as against demurrer, as, although the negotiations for the sale, which were oral except as to the purchase notes given, did not go to the reasonable fitness of the outfit for the purpose for which it was purchased, the law implies such a warranty, and, the outfit being entirely worthless, there was a failure of consideration by reason of the breach of such implied warranty.    p. 300.

9. Fraud.—*Representations Constituting.—Expressions of Opinion.* —As a general proposition, a representation to be fraudulent in law must be made concerning a material fact, upon which the party to whom it is made has a right to, and does, rely and it must be one

that misleads him to his injury; but mere expression of opinion, concerning the value, utility, future use and the like of property, do not in law constitute actionable fraud, though they be false. p. 303.

10. FRAUD.—*Representations Constituting.—Professions of Knowledge.—When Fraudulent.*—Where a party professing to have knowledge falsely represents a thing to exist and makes the representation for the purpose of procuring an undue advantage over a person, with whom he is contracting and who is without knowledge and relies thereon, he is guilty of fraud, although it may not appear that he knew his statements were false.   p. 304.

11. SALES.—*Fraud.—Sufficiency of Answer.—Expressions of Opinion. —When not Fraudulent.*—In an action on notes, an answer of fraud that a manufacturer sold the defendants a traction engine and six wagons of his own make, knowing that the outfit was to be used in hauling gravel and that its utility and worth for such purpose was unknown to the defendants; that the vendor represented to them that the engine and wagons could be used, at a great saving, in the form of a train in hauling gravel; that the defendants believed such representations and, after an inspection, purchased the outfit; that the engine was unable to draw the wagons, and that the agents of the vendor were unable to operate the outfit so that it would perform the work for which it was purchased, whereupon the vendor informed the defendants that it would make for them a lighter wagon of smaller capacity and that the engine would draw eight of such wagons loaded with gravel, and, relying upon such representations, defendants agreed to exchange the six original wagons for the eight lighter wagons; that at the time the exchange was agreed upon vendees were furnished blue print of the specifications of the new wagons, which they knew nothing about, but relied on the representations made to them; that new notes were executed and the old notes given for the purchase of the first outfit were surrendered; that when the new wagons were delivered, the defendants attempted to operate the same but could not; that the wagons were insufficient in strength, would not haul the amount of gravel as represented, and that the dumping appliance on the wagons would not work; that the representations made by the vendor as to the outfit being a success were in reckless disregard as to whether the representations were true or false and were made for the purpose of selling the outfit to the defendants; that the engines and wagons were worthless, and that the notes in suit were executed in consideration therefor, *held*, that such answer was insufficient as a plea of fraud, as the representations were mere expressions of opinion.   p. 305.

12. PLEADING.—*Answer of Failure of Consideration.—Sufficiency of.—* Where, in an action on notes, the cause was tried below and briefed on appeal on the theory of fraud, and the answer attempting to interpose the defense of fraud is held insufficient therefor, it is not

made good as a plea of failure or want of consideration by the bare, general allegation therein that the outfit for which the notes were executed was worthless. · pp. 306, 311.

13. APPEAL.—*Overruling Demurrer.*—*When Harmless.*—Where, in an action on notes the execution of which was admitted, the defendants pleaded two paragraphs of answer, one based on a breach of the warranty and the other based on fraud, the latter being held insufficient, and there was a verdict for the defendants, the overruling of the demurrer to the bad paragraph of answer can not be regarded as harmless, as there was nothing to show on which paragraph of answer the verdict of the jury was based. p. 306.

14. BILLS AND NOTES.—*Defenses.*—*Extension of Time.*—*Effect of.*— Where the maker of a promissory note agrees with the payee that if the latter will extend the time of payment for a definite time the · same will then be paid, and the time is so extended, such promise constitutes a new, enforceable contract, though the maker may have had a good defense to such note before the agreement to extend was made. p. 307.

15. SALES.—*Defects.*—*Discovery.*—*Ordinary Diligence.*—Where · a number of wagons to be used in hauling gravel were sold to defendants, who, for some time, attempted to use them for that purpose and thereby became acquainted with their lack of adaptability to the character of work to be performed, and the wagons were then exchanged for new wagons differing from those originally purchased only in that they were lighter and of smaller capacity and, for some time prior to the execution of the notes for the purchase price involved the defendants had the new wagons in their possession, with opportunity to make a test of the same that would have disclosed the infirmities complained of, they were bound, under such circumstances, to exercise ordinary diligence to discover such defects as may have existed therein. p. 308.

16. SALES.—*Fraud.*—*Representations.*—*Matters of Fact or Matters of Opinion.*—While it is the general rule that statements of a vendor as to the value, utility, and future use of the property he is selling may be put to, are mere matters of opinion; yet where the vendor knows that the vendee is wholly ignorant of the value or utility of the property to be sold and that he is relying on the vendor's representations as to value or utility, and such representations are not made as a mere expression of opinion but as a statement of fact, which statement the vendor knows to be untrue, such statement is a representation by which the vendor is bound. p. 309.

17. SALES.—*Defenses.*—*Issues Raised by Answer.*—While it is the law that where a manufacturer or dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be used for a particular purpose, and the buyer necessarily trusts the judgment of the manufacturer or dealer, there is an implied warranty that the article is reasonably fit for the purpose for which it is to be used, yet this rule can have no application to a question

of a vendor's fraudulent representations raised by an answer drafted on the theory of fraud. p. 310.

18. APPEAL.—*Rehearing.*—*Scope.*—Where appellant's brief in the original appeal did not contend that an answer held not good as a plea of fraud was sufficient as an answer of failure of consideration, such question can not be presented for the first time in the petition for a rehearing. p. 310.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by the Merchants National Bank of Massillon, Ohio, against William J. Nees and others. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*James V. Kent* and *Thomas M. Ryan,* for appellant.

*Sheridan & Gruber,* for appellees.

Appealed from the Clinton Circuit Court.

MORAN, J.—This was an action by appellant to enforce the collection of eight promissory notes, aggregating $3,865, against appellees, executed by them to The Russell & Company, a corporation of Massillon, Ohio, and held by appellant by indorsement. The defense interposed to the collection of the notes was predicated upon two affirmative paragraphs of answer addressed to the complaint, which consisted of eight paragraphs, each being based upon one of said notes respectively. It is admitted by both paragraphs of answer that the notes are due and unpaid, and were executed by appellees, but that they were executed in consideration of the sale and delivery to appellees by The Russell & Company of a certain device, consisting of a traction engine and eight wagons, which were intended to constitute a train for the purpose of hauling gravel in the construction of gravel roads. One of said paragraphs proceeds upon the theory of a breach of warranty and the other upon fraud in the sale of the above

described property.  Upon issue being joined, a trial
was had by a jury, which returned a verdict in
favor of appellees, together with answers to certain
interrogatories.   There was judgment upon the ver-
dict that appellant take nothing by its complaint and
that appellees recover costs.   From this judgment
an appeal has been taken.   Errors relied upon for
reversal are: Overruling the demurrer of appellant
to each paragraph of answer; overruling appellant's
motions in arrest of judgment and for a new trial.

Appellees assert that many of the errors relied
upon by appellant are not properly presented and
are therefore obviated under the rules of appellate
procedure.  As to such, we shall direct our attention
at this time.

It is insisted by appellees that no error can be
predicated upon the giving or refusing to give in-
structions for the reason that the record fails to show
that the instructions were filed and exceptions prop-
erly reserved thereto.   The state of the record as
originally filed in this court, and at the time appellee
filed his brief, would preclude an examination of the
instructions for the reasons above assigned.   Since
that time, however, Cause No. 9273 of this court
has been consolidated with this cause, which brings
before us a *nunc pro tunc* entry showing the filing
of the instructions and the reserving of the proper
exceptions to the same.   To the granting of the
*nunc pro tunc* entry appellees in this cause duly
excepted, and present for consideration the question
as to whether the memorandum made on the bench
docket by the trial court originally in reference to
instructing the jury was sufficient upon which to
grant appellant's application for a *nunc pro tunc*
entry.

It may be stated as a general rule that a *nunc
pro tunc* entry can be made only where there is

some memorial or other minute of the transaction in the case from which what actually
1.   took place in the prior proceeding can be clearly ascertained or known; and parol evidence alone is not sufficient to authorize a *nunc pro tunc* entry or to change a record after the proceeding has ceased to be *in fieri*, and after the term at which the record was made. *Williams* v. *Henderson* (1883), 90 Ind. 577; *Schoonover* v. *Reed* (1879), 65 Ind. 313; *Boyd* v. *Schott* (1898), 152 Ind. 161, 52 N. E. 752.

After an examination of the memorandum made by the trial court, and the facts and circumstances offered in evidence throwing light thereon, we are of the opinion, in view of the holdings, that the memorandum made by the trial court authorizing the granting of the application for a *nunc pro tunc* entry was sufficient, and that the instructions must be regarded as properly filed and exceptions duly reserved.   The criticism offered as to the
2.   giving and refusing to give instructions is very general and by abstract propositions of law, except as to instructions Nos. 11 and 12, given by the court of its own motion; and while we would be warranted in considering only instructions Nos. 11 and 12, as aforesaid, we have, however, examined each instruction given and those requested to be given and refused, in connection with our examination of the objections raised to instructions Nos. 11 and 12, and are fully convinced that when all the instructions given to the jury are considered as a whole, which they must be, there was no reversible
3.   error in the giving of either instruction No. 11 or 12, nor in refusing to give either of the instructions tendered by appellant.   *Baltimore, etc., R. Co.* v. *Trustees Tunnelton Lodge, etc.* (1911), 50 Ind. App. 220, 98 N. E. 141; *Indianapolis, etc.,*

*Transit Co.* v. *Reeder* (1912), 51 Ind. App. 533, 100 N. E. 101.

Appellant in its brief, under "Points and Authorities," has directed no proposition to the overruling of the motion in arrest of judgment, 4. nor is the same otherwise discussed. Hence the alleged error is not before us for consideration. *Buffkin* v. *State* (1914), 182 Ind. 204, 106 N. E. 362; *Nashville, etc., R. Co.* v. *Johnson* (1915), 60 Ind. App. 416, 106 N. E. 414; *Smith* v. *Finney* (1914), 56 Ind. App. 707, 104 N. E. 887; *Michael* v. *State* (1912), 178 Ind. 676, 99 N. E. 788; *Anderson* v. *State* (1913), 179 Ind. 590, 101 N. E. 84.

In its motion for a new trial many causes are assigned by appellant upon the admission and rejection of evidence. However, the only error to which a proposition is addressed under "Points and Authorities" is that the court refused appellant permission to have the witness William S. Nees answer the following question on cross-examination: "The interest was thrown off in consideration of the execution of the new notes, is that right?" There were two sets of notes involved in the transaction. The first set of notes were taken up by the execution of what was known as the new notes. Just preceding the above question, the witness Nees did answer that, when the new notes were executed and 5. the old ones taken up, the company did not charge appellee with the interest that had accrued on the old notes. This in substance covered appellant's inquiry. The extent to which a cross-examination may be carried is largely within the discretion of the trial court. No error was committed in sustaining the objection to the question thus propounded. *Shields* v. *State* (1897), 149 Ind. 395, 49 N. E. 351; *Davis* v. *Coblens* (1899), 174 U. S. 719, 19 Sup. Ct. 832, 43 L. Ed. 1147; *Ledford* v. *Led-*

*ford* (1884), 95 Ind. 283; *Citizens Street R. Co.* v. *Heath* (1902), 29 Ind. App. 395, 62 N. E. 107.

Appellant criticizes the trial court for expressing his opinion to one of the jurors, after the return of the verdict, that a correct result had been reached. It is the duty—much less a commendable quality— of a trial court to keep himself in such a frame of mind that he can pass upon all matters that come before him, or are likely to come before him, in an unbiased manner. This matter is sought to be presented as a cause for a new trial, although it occurred after the return of the verdict by the jury. As to what questions may be presented by the motion for a new trial, it may be stated as a general rule, that "if the ruling is connected with the trial procedure, and is not made upon the pleadings, or not made upon independent questions not relating to the trial, or is not made upon the verdict, or upon answers of the jury to interrogatories, or does not affect the form of the judgment or decree, it should be specified as a cause or reason for a new trial." Elliott's App. Proc. §350. The conduct of the trial judge complained of by appellant does 6. not come within the general rule as a cause for a new trial. It is only errors that can be rectified by the granting of the motion for a new trial that can be assigned as causes therefor.

It is contended by appellant that the trial judge was guilty of misconduct in leaving the court room during the argument of counsel. As to this 7 irregularity, if it may be termed such, the bill of exceptions discloses that after the evidence had been submitted and counsel for appellees was making an argument to the jury, the presiding judge voluntarily absented himself on one occasion for five minutes and on another for ten minutes, for the purpose of dictating instructions to the court re-

porter, who occupied a room that was separated by two doors from the court room where the trial was being conducted and where he could not hear or see what was going on in the court room proper. The bill of exceptions further discloses that there were no objections made or exceptions taken on behalf of counsel for appellant at the time.

There are authorities to the effect that the judge is such an essential part of the court that his absence for any length of time, without suspending the trial, will vitiate the proceedings, whether objections be made at the time or not; on the other hand, there are jurisdictions, of which this state is among the number, which hold that misconduct of anyone connected with the trial not affecting the jurisdiction of the court when acquiesced in without objection is waived, even though it be of such character that might otherwise vitiate the verdict; however, acts of misconduct on the part of the trial judge or anyone connected with the trial might be of such a nature as the policy of the law would forbid any inquiry as to whether harm resulted or not. The following authorities are instructive as to the above propositions. *Starr* v. *United States* (1903), 4 Ind. T. 550, 76 S. W. 105; *Thompson* v. *People* (1893), 144 Ill. 378, 32 N. E. 968; *Meredeth* v. *People* (1877), 84 Ill. 479; *Horne* v. *Rogers* (1900), 110 Ga. 362, 35 S. E. 715, 49 L. R. A. 176; *Ellerbe* v. *State* (1897), 75 Miss. 522, 22 So. 950, 41 L. R. A. 569; *O'Brien* v. *People* (1892), 17 Colo. 561, 31 Pac. 230; *State of Iowa* v. *Hammer* (1902), 116 Iowa, 284, 89 N. W. 1083; *Waterman* v. *State* (1888), 116 Ind. 51, 18 N. E. 63; *Kruse* v. *St. Louis, etc., R. Co.* (1911), 97 Ark. 137, 133 S. W. 841; *State of Iowa* v. *Carnagy* (1898), 106 Iowa 483, 76 N. W. 805; *Henning* v. *State* (1886), 106 Ind. 386, 6 N. E. 803, 7 N. E. 4, 55 Am. Rep. 756; *Coleman* v. *State* (1887), 111

Ind. 563, 13 N. E. 100; *Danes* v. *Pearson* (1893), 6 Ind. App. 465, 33 N. E. 976.

Appellant permitted the act on the part of the presiding judge to be repeated without objection, and his absence was nothing more than momentary, and then for the performance of services connected with the trial. In his absence, there does not appear from the record to have been any objections made on the part of appellant to any remarks that were made by appellees' counsel in his argument, nor is there anything to show that the absence of the trial judge was in any manner prejudicial to appellant. No doubt a word to the bailiff that the trial judge's presence was desired would have brought him back to the bench immediately. The better practice requires the visible presence of a presiding judge; that he be within hearing distance at all times during the actual progress of the trial, but the facts disclosed by the record in this case show no available error on account of the misconduct of the presiding judge in this particular.

This leaves for consideration the sufficiency of the answers, which are very voluminous and it would unnecessarily incumber the opinion to set the same out in full. We will refer to the parts thereof that are important to a discussion of the law applicable to the ruling on the demurrer. The paragraph of answer based upon a breach of warranty discloses that at the time The Russell & Company sold to appellees the engine and wagons

8. it was engaged in manufacturing outfits of this character; that its agent, who sold the outfit to appellees, knew that they were under contract to build numerous gravel roads, where the same were to be built, the character of the highways over which the engine and wagons were to be operated, as well as the gravel pits from where the gravel was

to be procured; and that appellees were without any knowledge of the outfit, except the information obtained from the agent of the company. It is further disclosed that appellees attempted to use the outfit as directed, but that it could not be used for the purpose for which it was purchased; that the engine could not draw the wagons when loaded, and the wagons could not be dumped and would clog; that the outfit was worthless and the company was so notified, and that it was at their disposal, and that the notes executed therefor would not be paid.    The negotiations and sale, so far as this paragraph of answer is concerned, were oral, except the consideration that passed, which was the notes in suit, and, in its final analysis, the answer shows no more than a detailed description of the outfit, how it could be used, and that the company manufactured the same and were familiar with the purpose for which it was sold and that it was worthless.    The negotiations did not go to the reasonable fitness of the outfit for the purpose for which it was purchased, and this quality not being included within the provisions expressed in the transaction, the same were implied by the law, as the law is a silent factor and enters into every contract.    What is implied in an express contract is as much a part of it as what is expressed.    *Hudson Canal Co.* v. *Pennsylvania Coal Co.* (1868), 8 Wall. 276, 19 L. Ed. 349; *Jordan* v. *Indianapolis Water Co.* (1902), 159 Ind. 337, 64 N. E. 680.

The legal proposition that when the expressed terms of a contract, relating to the purchase of machinery manufactured by the seller, do not relate to obligations created by an implied warranty, the same is not excluded, is fully covered by the *Penn, etc., Glass Co.* v. *De LaVergne Mach. Co.* (1914),

58 Ind. App. 333, 106 N. E. 722, where the authorities are collected and carefully analyzed.

In the light of the authorities, there was an implied warranty that the outfit purchased by appellees was fit for the purpose for which it was purchased, and being entirely worthless, there was a failure of consideration by reason of the breach of implied warranty. This paragraph of answer stated a defense to the complaint and the demurrer was properly overruled.

The paragraph of answer based upon fraud discloses briefly that The Russell & Company of Massillon, Ohio, sold to appellees a traction engine and eight wagons, which they manufactured for the purpose of hauling gravel, in consideration of $4,365; that appellees knew nothing about the merits of the outfit, which fact the company well knew, and with the idea of defrauding appellees, the company procured their local agent in Hamilton County, Indiana, whom they knew was a close friend of appellees, and upon whom they knew appellees would rely, to represent to them that The Russell & Company manufactured an outfit, consisting of an engine and a series of wagons, which appellees could use in their business to a great financial advantage; that each wagon would hold six cubic yards of gravel, and that the engine would draw eight wagons in the form of a train; appellees believed the representations made and after visiting the factory where they saw the outfit purchased, they had the same delivered to them, and in May, 1910, appellees attempted to use the outfit but could not; that the engine was unable to draw the wagons or any number of them; an effort was made by the company to operate the same, but it could not do so; the company found that it could not be made to do the work for which it was purchased,

thereupon through its local agent, upon whom they knew appellees would rely, they informed appellees that the company would make for them a lighter wagon, which would hold four cubic yards of gravel, and that the engine in their possession could draw eight of such wagons filled with gravel; and relying upon the representations, appellees agreed to exchange the six wagons for the eight lighter wagons, which the company agreed to manufacture for them; at the time of entering into the contract for the exchange of wagons, appellees were furnished a blueprint in reference to the new wagons, which they knew nothing about, but relied upon representations made to them, and new notes were executed and the old notes, which were executed for the first outfit, except a $500 note which had been paid, were surrendered. The new wagons were delivered in September, 1910, and appellees attempted to operate the same but could not—they were insufficient in strength; they could not haul the amount of gravel represented, nor could the gravel be dumped therefrom by the appliances for that purpose, as represented. The company made an effort to operate the outfit, but failed. The representations made by the company as to the outfit being a success were in reckless disregard as to whether the representations were true or false, and were made for the purpose of selling the outfit to appellees, and that the engine and wagons were worthless and the notes in suit were executed in consideration therefor.

It may be stated as a general proposition that a representation to be fraudulent in law must be made concerning a material fact, upon which 9. the party to whom it is made has a right to, and does, rely, and it must be one that misleads him to his injury; but mere expressions of opinion concerning the value, utility, future use

and the like of property, do not in law constitute actionable fraud, though they be false; but where a party professing to have knowledge falsely represents a thing to exist and makes the repre-

10.   sentation for the purpose of procuring an undue advantage over a person, with whom he is contracting and who is without knowledge and relies thereon, he is guilty of fraud, although it may not appear that he knew that his statements were false. *Conant* v. *National State Bank* (1889), 121 Ind. 323, 22 N. E. 250; *Smith* v. *Parker* (1897), 148 Ind. 127, 45 N. E. 770; *Frenzel* v. *Miller* (1871), 37 Ind. 1, 10 Am. Rep. 62; *Hartford Life Ins. Co.* v. *Hope* (1907), 40 Ind. App. 354, 81 N. E. 595, 1088; *Timmis* v. *Wade* (1892), 5 Ind. App. 139, 31 N. E. 827; *Hunter* v. *McLaughlin* (1873), 43 Ind. 38; *Gatling* v. *Newell* (1857), 9 Ind. 572; *Hedin* v. *Minneapolis Medical, etc., Institute* (1895), 62 Minn. 146, 64 N. W. 158, 35 L. R. A. 417, 54 Am. St. 628.

The gravamen of the charge of fraud in the answer is that the company that manufactured and sold the articles of property to appellees made representations to them with a reckless disregard for the truth, and that appellees were without any knowledge as to the matter under consideration, and relied thereon and were damaged thereby.

In *Conant* v. *National State Bank, supra*, the sellers represented that they were experts in flour mill machinery; that they had a peculiar knowledge in relation to flour mill machinery, and the purchasers were ignorant of such matters, and that the sellers being experts, and with an intent to deceive the purchasers and to take advantage of their want of knowledge, represented that the machinery was adapted to and in all respects sufficient, and had a capacity of one hundred barrels per day, to make three grades of flour economically and

profitably. This was held to be no more than the expression of an opinion and commendation relating entirely to the work the machinery could do in the future and the manner in which it would do the same.

The property for which the notes in suit were executed it will be remembered was not the property first purchased from The Russell & Company, but property received in exchange therefor. The new wagons contracted to be constructed were similar in mechanism to the wagons first purchased, and which were in appellee's possession, together with the engine, which was to make up a part of the new outfit, from May, 1910, to September of the same year. So as to the engine that was to make up a part of the new outfit appellees were not strangers, and as to the new wagons that were to take the place of the old ones they were not entirely without knowledge. The new wagons at the time of entering into the contract were not in existence; the company agreed to construct them for appellees in accordance with a blueprint, which was placed in their hands at the time of entering into the agreement to construct the same, and to take back the first wagons and surrender the notes executed therefor. Without extending the discussion further the representations made, as alleged, were not about an existing fact, but were about what the wagons would do when constructed and operated as directed, which falls within the class of representations that is termed by the law as the expression of an opinion; and the allegations of the answer are not such as to take the case out of the general rule that statements of matters of opinion in the nature of predictions cannot, although untrue, constitute a fraudulent representation. *Conant*

v. *National State Bank, supra; Frenzel* v. *Miller, supra; Kimball* v. *Bangs* (1887), 144 Mass. 321, 11 N. E. 113; *Hunter* v. *McLaughlin, supra; Williamson* v. *Holt* (1908), 147 N. C. 515, 61 S. E. 384, 17 L. R. A. (N. S.) 240; Elliott on Contracts §84.

So far as the answer is concerned, the cause was tried below and briefed in this court on the theory of fraud, and it is not good as such. It contains the general allegation, however, that the outfit for which the notes were executed, was worthless, and we have examined the same on the theory as to whether it is good as a pleading of a failure of consideration or a want of consideration; and under the holdings it cannot be regarded as good on either of these theories. *Neidefer* v. *Chastain* (1880), 71 Ind. 363, 36 Am. Rep. 198.

The execution of the notes being admitted, the verdict for appellees cannot be attributed to a failure of proof under the complaint, and there being nothing to show upon which paragraph of answer the verdict of the jury and the judgment of the court rests, the overrruling of the demurrer to a bad paragraph of answer cannot, under the circumstances, be regarded as harmless. *Shirk* v. *Neible* (1900), 156 Ind. 66, 59 N. E. 281, 83 Am. St. 150.

Cause No. 9273, in which a *nunc pro tunc* entry was granted in the court below and consolidated with this cause is affirmed. This cause, being No. 8758, is reversed, with instructions to the lower court to sustain the demurrer to the paragraph of answer charging fraud, and for further proceedings in accordance with this opinion.

ON PETITION FOR REHEARING.

MORAN, J.—It is contended by appellees in their petition for a rehearing that the court was in error in holding (1) that the fourth paragraph of appellees's answer was insufficient to state a defense to appellant's complaint; (2) in reversing the judgment even in the event the fourth paragraph of appellee's answer was insufficient.

The paragraph of answer under consideration is quite lengthy, and in addition to the brief statement of the same in the original opinion it is disclosed, among other things, that after the six wagons and engine were tried, it was found that the outfit could not be made to do the work for which it was purchased, and thereupon the wagons were returned to appellant company, and eight lighter wagons built for and delivered to appellees, which, together with the engine retained by appellees, made up the new outfit. After the new wagons were in appellees' possession for almost a month, the original notes were surrendered to appellees, except a $500 note which had been paid, and in the execution of the notes in suit, in lieu of the original notes, the payment of the consideration was extended, and appellees relieved from the payment of interest, which had been accumulating for several months. "Where the maker of a promissory note agrees with the payee that if the latter will extend the time of payment for a definite time he will pay the same at the expiration of said period, and the time is so extended such promise of the maker constitutes a new contract, binding in law and capable of enforcement, though the maker may have had a good defense to such note before the agreement to extend was made." *McCormick, etc., Co.* v. *Yoeman* (1900), 26 Ind. App. 415, 59 N. E. 1069.

It is clear under the circumstances that no fraud could be predicated on the original agreement that brought about the sale of the wagons and the execution of the notes therefor; and if the consideration for the execution of the notes in suit is based upon the extension of time of the payment of the consideration for the first wagons and foregoing the accumulated interest, then a further inquiry is unnecessary, but aside from this, the fourth paragraph of answer is not good. The original wagons were in appellees' possession for over four months, during which time appellees attempted to operate the same in their business, and during such time they thoroughly familiarized themselves with the infirmities thereof, as the answer specifically sets forth, wherein the original wagons failed to perform the work for which they were purchased, and their lack of adaptability to the character of the work to be performed. All this information, it is disclosed by the pleading, was obtained by appellees in attempting to operate the original wagons and in observing the agent of the company attempting to do so, and before contracting for the new wagons. The new wagons were similar to the original wagons, differing only in that they were lighter; and before executing the notes in question appellees, as we have seen, had the wagons in their possession, and had an opportunity to test the same, and the infirmity complained of is such that a test would have disclosed the same. Under such circumstances, a person is bound to exercise ordinary diligence. *Frenzel* v. *Miller* (1871) 37 Ind. 1, 10 Am. Rep. 62; *Furnas* v. *Friday* (1885), 102 Ind. 129, 1 N. E. 296; *Anderson Foundry, etc., Works* v. *Meyers* (1896), 15 Ind. App. 385, 44 N. E. 193.

It is contended by appellees that the statements made by the agent of the company as to the char-

acter of the work the wagons would do when built were more than the expression of an opinion. There are exceptions to the general rule that statements of a vendor as to the value, utility, and future use of the property he is selling may be put to, are mere matters of opinion, for instance, "where the vendee is wholly ignorant of the value of the property, and the vendor knows this, and also knows that the vendee is relying upon his (the vendor's) representation as to value, and such representation is not a mere expression of opinion but is made as a statement of fact, which statement the vendor knows to be untrue, such a statement is a representation by which the vendor is bound." *Murray* v. *Tolman* (1896), 162 Ill. 417, 44 N. E. 748.

Judge Campbell in the case of *Picard* v. *McCormick* (1862), 11 Mich. 68, says: "Where a purchaser, without negligence, has been induced by the arts of a cheating seller to rely upon material statements which are knowingly false, * * * it can make no difference in what respect he has been deceived, if the deceit was material and relied on." The facts that gave rise to this general statement were where a jeweler made false statements to an unskilled purchaser of the value of articles, which none but an expert could be supposed to understand. The facts pleaded in the paragraph of answer under consideration, as we have seen, do not come within the rule announced in the foregoing decisions.

Appellees cite *MacClamrock* v. *Flint* (1885), 101 Ind. 278; *Fitzmaurice* v. *Puterbaugh* (1896), 17 Ind. App. 318, 45 N. E. 624; *Oil Well Supply Co.* v. *Priddy* (1907), 41 Ind. App. 200, 83 N. E. 623; *Oil Well Supply Co.* v. *Watson* (1907), 168 Ind. 603, 80 N. E. 157, 15 L. R. A. (N. S.), 868, in support of the proposition that where a manufacturer or dealer contracts to supply an article which he manufactures or

produces, or in which he deals, to be used for a particular purpose, and the buyer necessarily trusts the judgment of the manufacturer or dealer, there is an implied warranty that the article is reasonably fit for the purpose for which it is to be used. This principle of law is well settled and may be invoked, where an issue is tendered raising the question of an implied warranty, as was held in the original opinion, but is not applicable to the paragraph of answer here under consideration, which is drafted on the theory of fraud.

Appellees cite *Hoffa v. Hoffman* (1870), 33 Ind. 172, and decisions announcing like principles of law. In this case, it was said, "The false and fraudulent representations as to the capacity of the woolen factory, as to what it had done, and the amount of custom thereto in the past, were matters about which the plaintiff was held in good faith not to misrepresent." This was a statement made concerning a material fact—what the factory had done in the past, and the extent of its customers. This decision furnishes no support to appellees.

In *Conant v. National State Bank, supra,* it was said: "The representations of the sellers of the machinery were as to what the machinery would do in the future, and such representations are deemed expressions of opinion, unless facts are averred which give them a different effect. The statements of the seller were not representations of what had been done in the past, but were assertions of what could be done in the future."

Appellees for the first time now insist that the pleading under consideration, if not good as a plea of fraud, is sufficient as an answer of failure of consideration. This does not present any question for a rehearing, not having been presented for consideration at the original hearing. Ewbanks Manual (2d ed.) §242.

However, the original opinion discloses that while the question was not presented originally, yet an examination was made along this line for the purpose of affirming the judgment, if possible, and the conclusion reached was that the pleading was not good as an answer of failure or want of consideration. It was said by Elliott J. in *Neidefer v. Chastain, supra:* "The bare general allegation that an article was worthless, thrown into a plea attempting to set up the defense of fraud, can not make good a plea which without it would be bad. The material, substantive facts pleaded are those upon which the validity of the plea must depend; its sufficiency can not be made to depend upon a sweeping concluding statement that the article was wholly without value. If this were the rule, then every plea attempting the defense of fraud could be made good by adding the general allegation that the article was valueless. * * * To permit this would be to permit sweeping and vague assertions to control specific statements of traversable facts."

The answer was drafted solely upon the theory of fraud; it was so treated by the court throughout the trial. The court addressed eight instructions to the issue of fraud as joined upon this paragraph of answer, whereby the jury's attention was called specifically to the principles of law involved in such issue. There was no other issue joined under which the evidence of fraud could have been admitted, nor to which the instructions on the subject of fraud were applicable. In other words, an issue of fraud was tried, when such issue was not properly charged.

The petition for a rehearing is overruled.

NOTE.—Reported in 110 N. E. 73, 112 N. E. 904. See under (1) 11 Cyc 764; (5) 40 Cyc 2511, 2514; (7) 3 C. J. 807, 38 Cyc 1297; (8) 35 Cyc 401; notes, 22 L. R. A. 189; 15 L. R. A. (N. S.) 855. Parol extension of the time for payment of a note, validity, Ann. Cas. 1914A 103.